## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | | |
|---|---|---|
| DEACERO, S.A.P.I. DE C.V. AND DEACERO USA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court No. 20-03924 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REBAR TRADE ACTION COALITION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

DEFENDANT'S MOTION TO DISMISS AND RESPONSE TO
PLAINTIFFS' MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                                   ANN C. MOTTO
IAN MCINERNEY                                 Trial Attorney
Of Counsel                                    U.S. Department of Justice
Office of the Chief Counsel                   Civil Division
for Trade Enforcement and Compliance          Commercial Litigation Branch
U.S. Department of Commerce                   P.O. Box 480
Washington, D.C.                              Ben Franklin Station
                                              Washington, D.C. 20044
                                              Tel: (202) 353-7968
                                              Email: Ann.C.Motto@usdoj.gov

July 9, 2021                                  *Attorneys for Defendant United States*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ....................................................................................... iv

STATEMENT PURSUANT TO RULE 56.2 ............................................................... 3

    I.    Administrative Determination Under Review ....................................... 2

    II.    Statement Of The Issues ........................................................................ 2

STATEMENT OF FACTS .......................................................................................... 3

SUMMARY OF THE ARGUMENT ........................................................................... 8

ARGUMENT ............................................................................................................. 10

    I.    The New Claims In Deacero's Opening Brief Challenging Presidential
        Action Should Be Dismissed For Lack Of Jurisdiction Or, Alternatively, For
        Failure To State A Claim ........................................................................ 10

        A.    Standard Of Review Applicable To Motions To Dismiss ........................ 10

        B.    Deacero Has Not Properly Invoked Jurisdiction Over Its Claim
                Challenging The President's Implementation Of Section 232 Tariffs
                On Mexican Steel Imports ....................................................................... 11

        C.    Deacero Should Not Be Granted Leave To Amend Because Any
                Section 1581(i) Claim Is Now Barred By The Statute Of Limitations ..... 17

        D.    Assuming This Court Possesses Jurisdiction Over Deacero's Claims
                Challenging Presidential Action, Those Claims Should Be Dismissed
                For Failure To State A Claim .................................................................. 19

    II.    Commerce's Determination To Deduct Section 232 Duties From Deacero's
        Constructed Export Price Is Supported By Substantial Evidence And In
        Accordance With Law ............................................................................. 25

        A.    Standard Of Review Applicable To Motions For Judgment On The
                Agency Record ........................................................................................ 25

        B.    Commerce's Determination Is Consistent With The Antidumping
                Duty Statute And The President's Proclamations ..................................... 27

C.      Commerce Reasonably Determined That Section 232 Duties Are
        "United States Import Duties" That Must Be Deducted From Export
        Price ....................................................................................................... 28

D.      Commerce's Interpretation Is Consistent With *Wheatland Tube* ............. 30

E.      Deacero's Remaining Arguments Lack Merit .......................................... 40

CONCLUSION ..................................................................................................................... 45

## TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(S)**

*AK Steel Corp. v. United States*,
   988 F. Supp. 594 (Ct. Int'l Trade 1997) ............................................................................ 30

*ALZ N.V. v. United States*,
   283 F. Supp. 2d 1302 (Ct. Int'l Trade 2003) ..................................................................... 41

*Am. Inst. for Int'l Steel, Inc. v. United States*,
   806 F. App'x. 982 (Fed. Cir. 2020) .................................................................................... 37

*Am. Mining Cong. v. Mine Safety Admin.*,
   995 F.2d 1106 (D.C. Cir. 1993) .......................................................................................... 43

*Apex Exports v. United States*,
   777 F.3d 1373 (Fed. Cir. 2015) .......................................................................................... 28

*Apex Frozen Foods Private Ltd. v. United States*,
   144 F. Supp. 3d 1308 (Ct. Int'l Trade 2016) ..................................................................... 43

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 11

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) .......................................................................................... 26

*Autoalliance Int'l, Inc. v. United States*,
   398 F. Supp. 2d 1326 (Ct. Int'l Trade 2005) ......................................................... 12, 14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 10, 11, 19

*Bethlehem Steel Corp. v. United States*,
   27 F. Supp. 2d 201 (Ct. Int'l Trade 1998) ......................................................................... 30

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. and Borsuan Mannesmann Pipe U.S. Inc.
v. United States*,
   494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) .............................................................. *passim*

*Brecoflex Co. v. United States*,
   44 F. Supp. 2d 225, *dismissed*,
   215 F.3d 1344 (Fed. Cir. 1999) .......................................................................................... 15

*Browning v. Clinton,*
   292 F.3d 235 (D.C. Cir. 2002) ................................................................ 10

*Car Carriers, Inc. v. Ford Motor Co.,*
   745 F.2d 1101 (7th Cir. 1984) ................................................................ 19

*C.B. Imports Transamerica Corp. v. United States,*
   807 F. Supp. 2d 1350 (Ct. Int'l Trade 2011) ........................................ 18

*Cedars-Sinai Med. Ctr. v. Watkins,*
   11 F.3d 1573 (Fed. Cir. 1993) ................................................................ 10

*Chemsol, LLC v. United States,*
   755 F.3d 1345 (Fed. Cir. 2014) .............................................................. 10

*Chevron U.S.A. Inc. v. Nat'l Res. Def. Council Inc.,*
   104 S. Ct. 2778 (1984) ................................................................... 9, 26

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938) ................................................................................ 25

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966) ................................................................................ 26

*DaimlerChrysler Corp. v. United States,*
   442 F.3d 1313 (Fed. Cir. 2006) ................................................... *passim*

*FCC v. Fox Television Stations, Inc.,*
   129 S. Ct. 1800 (2009) ............................................................................ 42

*Fla. Citrus Mut. v. United States,*
   515 F. Supp. 2d 1324 (Ct. Int'l Trade 2007) *aff'd,*
   550 F.3d 1105 (Fed. Cir. 2008*)* ...................................................... 8, 9

*Florsheim Shoe Co. v. United States,*
   880 F. Supp. 848 (Ct. Int'l Trade 1995) .............................................. 11

*Ford Motor Co. v. United States,*
   811 F.3d 1371 (Fed. Cir. 2016) ..................................................... 17, 18

*Foshan Shunde Yongjian Housewares & Hardware Co. v. United States,*
   896 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) .................................. 43, 44

*Fujitsu General, Ltd. v. United States,*
   88 F.3d 1034 (Fed. Cir. 1996) ................................................................ 27

*GSA, S.r.l. v. United States,*
    77 F. Supp. 2d 1349 (Ct. Int'l Trade 1999) ........................................................... 44

*H & H Wholesale Servs., Inc. v. United States,*
    437 F. Supp. 2d 1335 (Ct. Int'l Trade 2006) .......................................................... 10

*Hoogovens Staal BV v. United States,*
    4 F. Supp. 2d 1213 (Ct. Int'l Trade 1998) ............................................................. 30

*Husteel Co. v. United States,*
    375 F. Supp. 3d 1317 (Ct. Int'l Trade 2019) .......................................................... 19

*Huvis Corp. v. United States,*
    570 F.3d 1347 (Fed. Cir. 2009) .............................................................................. 42

*Jackson v. United States,*
    664 Fed. App'x. 922 (Fed. Cir. Nov. 3, 2016) ....................................................... 17

*JBF RAK LLC v. United States,*
    790 F.3d 1358 (Fed. Cir. 2015) .............................................................................. 27

*Jiaxing Brother Fastener Co. v. United States,*
    961 F. Supp. 2d 1323 (Ct. Int'l Trade 2014) ................................................... 43, 44

*JTEKT Corp. v. United States,*
    768 F. Supp. 2d 1333 (2011) .............................................................................. 44, 45

*Kellogg Brown & Root Servs., Inc. v. United States,*
    728 F.3d 1348 (Fed. Cir. 2013) .............................................................................. 11

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.,*
    464 F.3d 1339 (Fed. Cir. 2006) .............................................................................. 17

*Kent v. Principi,*
    389 F.3d 1380 ......................................................................................................... 11

*Koyo Seiko Co. v. United States,*
    516 F. Supp. 2d 1323 (Ct. Int'l Trade 2007) .......................................................... 42

*Maple Leaf Marketing Inc. v. United States et al.,*
    Slip Op. 21-77, 2021 WL 2557798 (Ct. Int'l Trade June 22, 2021) ................. *passim*

*Milo & Gabby LLC v. Amazon.com, Inc.,*
    693 F. App'x 879 (Fed. Cir. 2017) ......................................................................... 19

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 (Fed. Cir. 2006) ............................................................................ 26

*Norsk Hydro Canada, Inc. v. United States*,
   472 F.3d 1347 (Fed. Cir. 2006) ..................................................................... 12, 13

*Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States*,
   268 F.3d 1376 (Fed. Cir. 2001) ............................................................................ 44

*Shinyei Corp. of Am. v. United States*,
   355 F.3d 1297 (Fed. Cir. 2004) ............................................................................ 12

*SKF USA Inc. v. United States*,
   74 F. Supp. 2d 1297 (Ct. Int'l Trade 1999) .......................................................... 13

*Thomas v. Board of Trustees of Ohio State University*,
   195 U.S. 207 (1904) .............................................................................................. 16

*Thomson Comsumer Elecs., Inc. v. United States*,
   247 F.3d 1210 (Fed. Cir. 2001) ............................................................................ 13

*Timken Co. v. United States*,
   354 F.3d 1334 (Fed. Cir. 2004) ..................................................................... 26, 29

*Torrington Co. v. United States*,
   68 F.3d 1347 (Fed. Cir. 1995) .............................................................................. 39

*Transpacific Steel LLC v. United States*,
   415 F. Supp. 3d 1267 (Ct. Int'l Trade 2019) ........................................................ 25

*U.S. Steel Grp. v. United States*,
   96 F.3d 1352 (Fed. Cir. 1996) .............................................................................. 27

*U.S. Steel Grp., a Unit of USX Corp. v. United States*,
   15 F. Supp. 2d 892 (Ct. Int'l Trade 1998) ........................................................ 9, 30

*United Pac. Ins. Co. v. United States*,
   464 F.3d 1325 (Fed. Cir. 2006) ............................................................................ 10

*United States v. Eurodif S.A.*,
   555 U.S. 305 (2009) ................................................................................... 25, 26, 27

*United States v. Shabahang Persian Carpets, Ltd.*,
   963 F. Supp. 1207 (Ct. Int'l Trade 1997) ............................................................. 18

*Universal Steel Prod., Inc. v. United States,*
  495 F. Supp. 3d 1336 (Ct. Int'l Trade 2021)................................................. *passim*

*W. Travel, Inc. v. United States,*
  30 C.I.T. 591 (2006)......................................................................... 18

*Washington Int'l Ins. Co. v. United States,*
  138 F. Supp. 2d 1314 (Ct. Int'l Trade 2001)................................................. 15

*Wheatland Tube Co. v. United States,*
  495 F.3d 1355 (Fed. Cir. 2007).............................................................. *passim*

*Yanko v. United States,*
  869 F.3d 1328 (Fed. Cir. 2017).............................................................. 11

*Zenith Electronics Corp. v. United States,*
  77 F.3d 426 (Fed. Cir. 1996)............................................................... 29, 30

## **STATUTES**

5 U.S.C. § 551 ............................................................................. 43

5 U.S.C. § 553 ............................................................................. 43

5 U.S.C. § 564 ............................................................................. 43

19 U.S.C. § 1515 .......................................................................... 13

19 U.S.C. § 1516 .......................................................................... 11, 13, 25

19 U.S.C. § 1675 .......................................................................... 35, 42

19 U.S.C. § 1677a ......................................................................... *passim*

19 U.S.C. § 1677b ......................................................................... 28, 29, 39

19 U.S.C. § 1862 .......................................................................... *passim*

19 U.S.C § 2132 ........................................................................... 36

19 U.S.C. § 2251 .......................................................................... 30, 35

28 U.S.C. § 1581 .......................................................................... *passim*

28 U.S.C. § 2632 .......................................................................... *passim*

28 U.S.C. § 2636(i) ....................................................................... 17

## RULES

USCIT Rule 3 ................................................................................................ 14, 16,17

USCIT Rule 8 ...................................................................................................... 19

USCIT Rule 12 ...................................................................................................... 1

USCIT Rule 15 .............................................................................................. 17, 18

## OTHER AUTHORITES

H.R. Doc. No. 103-316, Vol. 1, at 964 (1994) *reprinted in* 1994 U.S.C.C.A.N. 3773) ............... 37

## ADMINISTRATIVE DETERMINATIONS

*Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review,*
   69 Fed. Reg. 19,153 (Dep't of Commerce Apr. 12, 2004) ........................................... 31, 32, 37

*Certain Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review,*
   69 Fed. Reg. 61,649 (Dep't of Commerce Oct. 20, 2004) ........................................................ 31

*Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States,*
   83 Fed. Reg. 11,625 (Mar. 15, 2018) ................................................................ *passim*

*Proclamation 9711 of March 22, 2018 Adjusting Imports of Steel Into the United States,*
   83 Fed. Reg. 13,361, ¶ 4 (Mar. 28, 2018) ........................................................ *passim*

*Proclamation 9740 of April 30, 2018 Adjusting Imports of Steel Into the United States,*
   83 Fed. Reg. 20,683, ¶ 7 (May 7, 2018) .......................................................... *passim*

*Proclamation 9894 of May 19, 2019, Adjusting Imports of Steel Into the United States,*
   84 Fed. Reg. 23,987 (May 23, 2019) ............................................................... *passim*

*Steel Concrete Reinforcing Bar From Mexico: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018,*
   85 Fed. Reg. 2,702 (Dep't Commerce Jan. 16, 2020) ................................................. 6

*Steel Concrete Reinforcing Bar from Mexico: Final Results of Antidumping Duty Administrative Review; 2017-2018,*
   85 Fed. Reg. 71,053 (Dep't Commerce Nov. 6, 2020) ............................................... 2

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE**

———————————————————————
                                                      )
DEACERO, S.A.P.I. DE C.V. AND        )
DEACERO USA, INC.,                           )
                                                      )
      Plaintiffs,                                )
                                                      )
v.                                                       )
                                                      )
UNITED STATES,                                )        Court No. 20-03924
                                                      )
      Defendant,                               )
                                                      )
and                                                    )
                                                      )
REBAR TRADE ACTION COALITION,  )
                                                      )
      Defendant-Intervenor.            )
———————————————————————)

**DEFENDANT'S MOTION TO DISMISS AND RESPONSE TO
PLAINTIFFS' MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

      Pursuant to United States Court of International Trade (USCIT) Rules 12(b)(1), 12(b)(6),

and 56.2, defendant, the United States, respectfully requests that the Court partially dismiss

Deacero, S.A.P.I. DE C.V.'s and Deacero USA, Inc.'s (collectively, Deacero or plaintiffs) claims

for lack of jurisdiction or, alternatively, for failure to state a claim, and deny Deacero's motion

for judgment upon the agency record.

      Deacero raises new claims in its opening brief that are not included in its summons and

complaint.  Specifically, Deacero argues that the President failed to implement timely action

under 19 U.S.C. § 1862 (Section 232), and that the tariffs imposed on Mexican steel imports are

therefore unlawful.  The Court does not possess jurisdiction over these new allegations because

Deacero has not adequately alleged a jurisdictional basis for these claims, and it failed to

concurrently file a separate summons and complaint for these claims.  Additionally, Deacero's

new claims are now time-barred and, in any event, lack merit because the President's

implementation of tariffs on Mexican steel imports fully complied with Section 232's timing

provisions.

Deacero also challenges the Final Results issued by the United States Department of

Commerce (Commerce) in the 2017-2018 administrative review of the antidumping duty order

covering steel concrete reinforcing bar (rebar) from Mexico.  *Steel Concrete Reinforcing Bar*

*from Mexico: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed.

Reg. 71,053 (Dep't of Commerce Nov. 6, 2020) (Final Results).  As we demonstrate below, the

Court should deny plaintiffs' motion for judgment on the agency record because Commerce's

Final Results are supported by substantial evidence and in accordance with law.

I.      Administrative Determination Under Review

The administrative determination under review is the Final Results of the 2017-2018

administrative review of the antidumping duty order covering rebar from Mexico.  *Steel*

*Concrete Reinforcing Bar from Mexico: Final Results of Antidumping Duty Administrative*

*Review; 2017-2018*, 85 Fed. Reg. 71,053 (Dep't of Commerce Nov. 6, 2020) (P.R. 211) and

accompanying Issues and Decision Memorandum (IDM) (P.R. 192).

II.     Statement Of The Issues

(1)  Whether this Court possesses jurisdiction over Deacero's new allegations challenging

presidential action where Deacero has failed to properly invoke jurisdiction over those claims.

(2)  Whether this Court possesses jurisdiction over Deacero's new allegations challenging

presidential action where Deacero has failed to file concurrently a complaint and summons

alleging those claims.

(3)  Whether Deacero's new claims challenging presidential action are barred by the statute of limitations.

(4) Whether, assuming this Court possesses jurisdiction over Deacero's claims challenging presidential action, those claims should be dismissed for failure to state a claim because the President's implementation of tariffs on Mexican steel imports complied with Section 232's timing provisions.

(5) Whether Commerce's decision to deduct Section 232 duties from Deacero's constructed export price is supported by substantial evidence and in accordance with law.

<u>STATEMENT OF FACTS</u>

On March 8, 2018, pursuant to his authority under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, the President imposed a 25 percent *ad valorem* tariff on imports of steel articles from all countries, except Canada and Mexico.  *See Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018).

The President concurred with the Secretary of Commerce's finding that steel articles were being imported into the United States in such quantities and under such circumstances as to threaten to impair the country's national security.  *Id.* ¶ 5; *see* 19 U.S.C. § 1862(b)(3)(A). The Secretary found that excessive steel imports were weakening our internal economy and shrinking our ability to meet national security steel production requirements in a national emergency.  Proclamation 9705, ¶ 2.  The goal of the 25 percent tariff was to reduce imports to a level that would "ensure that domestic producers can continue to supply all the steel necessary for critical industries and national defense."  *Id.* ¶¶ 4-5, 8.  The President stated that the new 25

percent tariff applied "in addition to any other duties, fees, exactions, and charges applicable to such imported steel articles."  *Id.* clause 2.

To establish the tariff, the President modified subchapter III, chapter 99, of the Harmonized Tariff Schedule of the United States (HTSUS) to add a new heading, 9903.80.01, which provided for an additional 25 percent tariff for "products of iron or steel provided for in the tariff headings or subheadings enumerated in note 16 to this subchapter, except products of Canada [or] of Mexico…or any exclusions that may be determined and announced by the Department of Commerce."  HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted Mar. 29, 2018).  The President also added a new Note 16, subsection (a) of which provided:

> Heading 9903.80.01 sets forth the *ordinary customs duty* treatment applicable to all entries of iron or steel products from all countries, except products of Canada and of Mexico, classifiable in the headings or subheadings enumerated in this note.  Such goods shall be subject to duty as provided herein.  No special rates of duty shall be accorded to goods covered by heading 9903.80.01 under any tariff program enumerated in general note 3(c)(i) to the tariff schedule.  *All anti-dumping, countervailing, or other duties and charges applicable to such goods shall continue to be imposed.*

Proclamation 9705, Annex (U.S. Note 16(a) (emphasis added)).  Consistent with the President's instructions, the following row was added to the HTSUS:

| Heading/ Subheading | Stat Suf-fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 9903.80.01 | 1/ | Products of iron or steel provided for in the tariff headings or subheadings enumerated in note 16 to this subchapter, except products of Canada, of Mexico, of Australia, of Argentina, of South Korea, of Brazil, or of the member countries of the European Union or any exclusions that may be determined and announced by the Department of Commerce.................. | 1/ | 25% | | The duty provided in the applicable subheading + 25% |

HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted Mar. 29, 2018).

When he initially implemented the Section 232 tariff, the President determined that

Canada and Mexico "present a special case," and "determined that the necessary and

appropriate means to address the threat to the national security posed by imports of steel articles

from Canada and Mexico is to continue ongoing discussions with these countries and to exempt

steel articles imports from these countries from the tariff, at least at this time."  Proclamation

9705, ¶ 10.  The President explained that the 25 percent tariff was "an important first step in

ensuring the economic viability of our domestic steel industry," and without the tariff "and

satisfactory outcomes in ongoing negotiations with Canada and Mexico, the industry will

continue to decline{.}"  *Id.* ¶ 11.

Fourteen days later, on March 22, 2018, the President issued another proclamation,

declaring that the United States was "continuing discussions with Canada and Mexico," as well

as other countries, "on satisfactory alternative means to address the threatened impairment to

the national security by imports of steel articles from those countries[.]"  *Proclamation 9711 of*

*March 22, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 13,361, ¶ 4

(Mar. 28, 2018).  The President further declared that "unless {he}{} determine{d} by further

proclamation that the United States has reached a satisfactory alternative means to remove the

threatened impairment to the national security by imports of steel articles" from Mexico, as well

as other countries with which negotiations had ensued, the 25 percent tariff set forth in

Proclamation 9705 "shall be effective May 1, 2018" for those countries.  *Id.* ¶ 11.

On April 30, 2018, the President extended the temporary tariff exemption for products

from Mexico and other similarly situated countries until June 1, 2018.  *Proclamation 9740 of*

*April 30, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 20,683,

¶ 7 (May 7, 2018).  The United States did not initially reach an agreement with Mexico regarding alternative means to address the impairment to national security by June 1, 2018, and the tariff imposed in Proclamation 9705 automatically took effect with respect to Mexican steel imports on that date.  *See id*; Proclamation 9711, ¶ 11.  Imports of steel rebar produced by Deacero were thus subject to the 25 percent tariff after June 1, 2018.  *See* Proclamation 9705, clause 2; Proclamation 9711, ¶ 11; Proclamation 9740, ¶ 7.

On May 19, 2019, the President issued another proclamation exempting Mexico and Canada from the 25 percent tariff on a long-term basis.  *Proclamation 9894 of May 19, 2019, Adjusting Imports of Steel Into the United States*, 84 Fed. Reg. 23,987 (May 23, 2019).

On February 6, 2019, Commerce initiated the 2017-2018 administrative review of rebar from Mexico covering 18 companies.  *See* Initiation of Admin. Review (P.R. 8).  The period of review (POR) was November 1, 2017 through October 31, 2018.  IDM at 1.  On March 1, 2019, Commerce selected Deacero and Grupo Simec as mandatory respondents for individual examination.  *See* Respondent Selection Memo (P.R. 10).

Commerce published the Preliminary Results on January 16, 2020.  *See Steel Concrete Reinforcing Bar From Mexico: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 2,702 (Dep't of Commerce Jan. 16, 2020) (P.R. 143) and accompanying Preliminary Issues and Decision Memorandum (PDM) (P.R. 133).  In the Preliminary Results, Commerce treated Section 232 national security duties as "United States import duties" and deducted them from Deacero's constructed export price, consistent with 19 U.S.C. § 1677a(c)(2)(A).  *See* PDM at 12-14.  In its questionnaire responses, Deacero stated that it was the importer of record and acknowledged that it paid Section 232 duties on certain United States sales during the period of review.  *See* Deacero's B, C Questionnaire Response Part 8 at

Exhibit V-1 (C.R. 96) (Exhibit V-1); *see also* Deacero's B, C Questionnaire Response Part 6 at

C-55 (C.R. 94).  Additionally, Deacero reported Section 232 duties in its sales database.  *See*

Exhibit SC Part 2 at Exhibit SC-9 (Exhibit SC-9) (C.R. 193); *see also* Section A-C Questionnaire

Response (C.R. 177).  Commerce noted that, while Mexico was excluded from the Section 232

tariff as of May 19, 2019, Proclamation 9894 "took effect after the end of the POR of the instant

review and contains no retroactive clause{.}"  *Id.* at 14.  Thus, Commerce determined that it was

"appropriate to continue to deduct the 232 duties paid on Deacero's entries during the POR from

the U.S. price."  *Id.*

In the Final Results, Commerce continued to find that Section 232 duties are "United

States import duties" for purposes of the antidumping duty statute, and continued to deduct them

from Deacero's constructed export price.  IDM at 11.  Commerce acknowledged the Federal

Circuit's decision in *Wheatland Tube Co. v. United States*, 495 F.3d 1355 (Fed. Cir. 2007),

sustaining Commerce's determination not to adjust United States price in antidumping

proceedings for Section 201 safeguard duties.  IDM at 11-12.  Commerce determined, however,

that Section 232 duties are materially different from Section 201 and antidumping duties, and,

therefore, *Wheatland Tube* did not require a different outcome in this case.  IDM at 11

(concluding that "the issues are different as treatment of section 201 duties differs from treatment

of section 232 duties.").

Moreover, as Commerce reasoned, the President explicitly stated that the Section 232

tariff applied in addition to any other duties.  Proclamation 9705, clause 2; *see* IDM at 12. The

President also stated that heading 9903.80.01—which established the Section 232 duty—sets

forth the "ordinary customs duty" applicable to all steel imports.  Proclamation 9705, Annex

(U.S. Note 16(a)); *see* HTSUS, Revision 2, Chapter 99, subheading 9903.80.01 (Posted Mar. 29,

2018) (table referring to the 25% rate as "general," not "special.").  Accordingly, Commerce determined that Section 232 duties "are treated as any other duties," and are required to be deducted from United States price.  IDM at 13.

## SUMMARY OF THE ARGUMENT

Deacero's newly-raised allegations challenging presidential action should be dismissed for lack of jurisdiction.  28 U.S.C. § 1581(c)—the sole jurisdictional basis invoked in Deacero's summons and complaint—does not cover claims challenging presidential action.  And Deacero failed to file a separate summons and complaint for its claims challenging presidential action, in violation of 28 U.S.C. § 2632(a).  Additionally, claims challenging the President's proclamations issued in March and April 2018 are now barred by the statute of limitations, rendering any potential amendment to Deacero's summons and complaint (or an entirely new summons and complaint) futile and untimely.

However, even assuming that this Court possesses jurisdiction over Deacero's new claims, those claims should be dismissed for failure to state a claim.  Deacero's claims challenging the President's proclamations are completely absent from its complaint and, therefore, violate basic notice pleading requirements.  Moreover, because the President's implementation of tariffs on Mexican steel imports fully complied with Section 232's timing provisions, Deacero's new claims lack merit and should be dismissed.

Deacero's motion for judgment on the agency record challenging Commerce's Final Results should also be denied.  19 U.S.C. § 1677a(c)(2)(A) provides that the price used to establish constructed export price (*i.e.*, United States price) shall be reduced by the amount included in such price attributable to "United States import duties."  The phrase "United States import duties" is ambiguous, *see, e.g.*, *Wheatland Tube*, 495 F.3d at 1359; *Fla. Citrus Mut. v.*

*United States*, 515 F. Supp. 2d 1324, 1331 (Ct. Int'l Trade 2007), *aff'd*, 550 F.3d 1105 (Fed. Cir. 2008), and, therefore, Commerce's interpretation of the phrase to encompass Section 232 duties is entitled to deference under *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council Inc.*, 104 S. Ct. 2778 (1984).

As Commerce explained in its Preliminary Results, the legislative history of the Antidumping Act of 1921 referred to antidumping duties as "special dumping duties," signifying that "special dumping duties" were distinguished and treated differently from ordinary "United States import duties" under the antidumping duty statute.  PDM at 12; *see* S. Rep. No. 67-16 (1921).[1]  Commerce determined that Section 232 duties were not similar to antidumping or safeguard duties, and therefore did not fall outside of the definition of "United States import duties."

In its Final Results, Commerce further explained that the President's proclamation treated Section 232 duties as any other duties, referring to them as "ordinary" customs duties and instructing that the duties be imposed in addition to all other duties, including antidumping duties.  IDM at 12-13.  Moreover, this Court recently sustained Commerce's determination that export price must be reduced by Section 232 duties paid.  *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. and Borsuan Mannesmann Pipe U.S. Inc. v. United States*, 494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) (*Borusan*).  Thus, Commerce's interpretation of the statute is reasonable and must be sustained.

---

[1] Commerce's practice of distinguishing antidumping duties from "United States import duties" has been sustained by this Court and the Federal Circuit.  *See, e.g., U.S. Steel Grp., a Unit of USX Corp. v. United States,* 15 F. Supp. 2d 892, 898 (Ct. Int'l Trade 1998) (collecting cases); *Wheatland Tube*, 495 F.3d at 1361 (sustaining Commerce's determination that safeguard duties, like antidumping duties, do not fall within the meaning of "United States import duties.").

The remainder of Deacero's claims also lack merit.  Because Deacero indisputably paid Section 232 duties during the POR, Commerce's decision to deduct Section 232 duties from Deacero's United States price did not retroactively change Deacero's legal obligations.  Nor was Commerce required to partake in notice and comment rulemaking procedures before deducting Section 232 duties from United States price, consistent with the President's proclamations.

<u>ARGUMENT</u>

I.   The New Claims In Deacero's Opening Brief Challenging Presidential Action Should Be <u>Dismissed For Lack Of Jurisdiction Or, Alternatively, For Failure To State A Claim</u>

A.  <u>Standard Of Review Applicable To Motions To Dismiss</u>

Deacero bears the burden of establishing that jurisdiction exists as to all of its claims. *Chemsol, LLC v. United States*, 755 F.3d 1345, 1349 (Fed. Cir. 2014).  When a motion challenges the sufficiency of the pleadings, the Court assumes that the allegations in the complaint are true.  *H & H Wholesale Servs., Inc. v. United States*, 437 F. Supp. 2d 1335, 1339 (Ct. Int'l Trade 2006).  But if the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction.  *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  "In such a case, the allegations in the complaint are not controlling," "and only uncontroverted factual allegations are accepted as true for purposes of the motion."  *Id.*

A motion to dismiss for failure to state a claim is appropriate when a plaintiff's allegations do not entitle it to a remedy.  *See United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327 (Fed. Cir. 2006) (citation omitted).  The motion "tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), which must be dismissed if it fails to present a legally cognizable right of action, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Dismissal is required when a complaint fails to "state a claim to

10

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 570). "In deciding a motion to dismiss, the court must accept well-pleaded

factual allegations as true and must draw all reasonable inferences in favor of the claimant,"

*Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013), but

need not accept legal conclusions contained in the same allegations, *Twombly*, 550 U.S. at 555.

Interpretations of governing legal authorities, such as statutes, regulations, and

presidential proclamations, involve questions of law. *See Kent v. Principi*, 389 F.3d 1380, 1384

(Fed. Cir. 2004) (interpretation of a statute or regulation is a question of law) (citation omitted);

*Yanko v. United States*, 869 F.3d 1328, 1331 (Fed. Cir. 2017) (treating as a "pure legal issue of

statutory interpretation" claim based on interpretation of statutory provision and related

executive order); *Florsheim Shoe Co. v. United States*, 880 F. Supp. 848, 850 (Ct. Int'l Trade

1995) ("The issue in dispute, therefore, is a question of law: what is the scope of the

Proclamation."). Such issues are appropriately resolved under Rule 12(b)(6). *See, e.g., Yanko*,

869 F.3d at 1331 (citation omitted).

**B.  Deacero Has Not Properly Invoked Jurisdiction Over Its Claim Challenging The President's Implementation Of Section 232 Tariffs On Mexican Steel Imports**

Deacero alleges in its complaint that "{t}his Court has jurisdiction pursuant to 28 U.S.C.

§ 1581(c) and 19 U.S.C. § 1516a(a)(2)." ECF Document No. 2 (Compl.) ¶ 1. 28 U.S.C.

§ 1581(c) confers jurisdiction on this Court to consider challenges to Commerce's assessment of

antidumping and countervailing duties based on its determinations during administrative

reviews. *See* 28 U.S.C. § 1581(c). Likewise, 19 U.S.C. § 1516a(a)(2) governs "{j}udicial

review in countervailing duty and antidumping duty proceedings." 19 U.S.C. § 1516a(a)(2).

Deacero's complaint contains one count alleging that "Commerce's determination to deduct

from the price of Deacero's U.S. sales an amount for section 232 duties is not supported by substantial evidence on the record and is otherwise not in accordance with the law." Compl. ¶ 16. Similarly, Deacero's summons only alleges that it "contest{s} aspects of the U.S. Department of Commerce, International Trade Administration's final determination in the antidumping duty administrative review{.}" ECF Document No. 1 (Summons).

In its opening brief, however, Deacero for the first time additionally argues that "{a}s an initial matter, the United States' application of Section 232 duties to imports from Mexico are unlawful because duties on Mexico were imposed and implemented outside of the applicable time limits in 19 U.S.C. § 1862(c)(1)." ECF Document No. 23 (Pl. Br.) at 8, 11-21. Because Deacero has not properly alleged jurisdiction over its claims challenging the President's implementation of Section 232 tariffs, those claims must be dismissed for lack of jurisdiction.

"[T]he Court of International Trade, like all federal courts, is a court of limited jurisdiction, and . . . the party invoking that jurisdiction bears the burden of establishing it." *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). It is well-settled "that a plaintiff must establish jurisdiction independently for each cause of action asserted." *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1318–19 (Fed. Cir. 2006). In other words, this Court "must have its own independent basis for jurisdiction under 28 U.S.C. § 1581" for Deacero's claims to proceed. *See Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004). "[S]ubject matter jurisdiction is established when the suit is filed, which subsequent events cannot alter." *Autoalliance Int'l, Inc. v. United States*, 398 F. Supp. 2d 1326, 1333 (Ct. Int'l Trade 2005).

Section 1581(c)—the sole basis of jurisdiction alleged in Deacero's summons and complaint—confers jurisdiction on this Court over Deacero's allegation that Commerce's

decision to deduct Section 232 duties from United States price for purposes of calculating an antidumping margin was arbitrary and capricious (the only allegation contained in the complaint and summons).  *See* Pl. Br. at 21-32; *see generally* Compl.; Summons.  Section 1581(c) does not, however, provide this Court with jurisdiction over Deacero's new arguments challenging *the President*'s actions and *the President*'s proclamations.  *See Norsk Hydro*, 472 F.3d at 1357 ("*Commerce*'s legal decisions in the administrative process are subject to judicial review under 19 U.S.C. § 1516a(a)(2)(A) and 28 U.S.C. § 1581(c).") (emphasis added).

Even assuming section 1581(i) could bestow jurisdiction on this Court over Deacero's new claims, Deacero did not properly invoke jurisdiction under section 1581(i).  Section 1581(i) is a residual grant of jurisdiction that is only available when no other provision of 28 U.S.C. § 1581 is available or when the remedy under any other subsection would be manifestly inadequate.  *Thomson Comsumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1214 (Fed. Cir. 2001); *see* 28 U.S.C. § 1581(i).  "To properly invoke the jurisdiction of the Court in an action against the government, a litigant must comply with the terms on which the government had consented to be sued."  *SKF USA Inc. v. United States*, 74 F. Supp. 2d 1297, 1300 (Ct. Int'l Trade 1999).  "Except for civil actions specified in subsections (b) and (c) of this section, a civil action in the Court of International Trade shall be commenced by *filing concurrently* with the clerk of the court *a summons and complaint*, with the content and in the form, manner, and style prescribed by the rules of the court."  28 U.S.C. § 2632(a) (emphasis added).[2]  "In adherence to

---

[2] Under subsection (b), "{a} civil action in the Court of International Trade under section 515 {(19 U.S.C. § 1515)} or section 516 {(19 U.S.C. § 1516)} of the Tariff Act of 1930 shall be commenced by filing with the clerk of the court a summons, with the content and in the form, manner, and style prescribed by the rules of the court."  *Id.* § 2632(b).  Under subsection (c), "{a} civil action in the Court of International Trade under section 516A of the Tariff Act of 1930 {(19 U.S.C. § 1516a)} shall be commenced by filing with the clerk of the court a summons or a

the statutory mandate of § 2632(a), this Court adopted Rule 3(a)." *Autoalliance Int'l*, 398 F.

Supp. 2d at 1333.  Rule 3(a) provides:

(a) <u>Commencement</u>.

A civil action is commenced by filing with the clerk of the court:

(1) A summons in an action described in 28 U.S.C. § 1581(a) or (b);

(2) A summons, and within 30 days thereafter a complaint, in an action described in 28 U.S.C. § 1581(c) to contest a determination listed in section 516A(a)(2) or (3) of the Tariff Act of 1930 or;

(3) A summons and complaint *in all other actions*.

USCIT R. 3(a) (emphasis added).

Deacero only filed a summons and complaint for a section 1581(c) action.  *See* 28 U.S.C.

§ 2632(c); USCIT R. 3(a)(2); Compl.; Summons.  It did not concurrently file a summons and

complaint for "all other actions" it now seeks to bring against the United States.  *See* USCIT R.

3(a)(3); 28 U.S.C. § 2632(a).  In fact, neither the complaint nor the summons even allege facts

supporting section 1581(i) jurisdiction.  *See generally* Compl.; Summons.  "{I}t is settled that a

party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to

establish the court's jurisdiction."  *DaimlerChrysler*, 442 F.3d at 1318.  Deacero has therefore

failed to commence a section 1581(i) action in compliance with section 2632(a) and Rule

3(a)(3).

This Court has previously held that it cannot exercise section 1581(i) jurisdiction over a

claim where plaintiff fails to adhere to procedural requirements set forth in section 2632(a) and

Rule 3(a)(3).  In *Autoalliance Int'l, Inc. v. United States*, this Court held that "{i}n order to

---

summons and a complaint, as prescribed in such section, with the content and in the form, manner, and style prescribed by the rules of the court."  *Id*. § 2632(c).

14

properly bring a suit under § 1581(i) . . ., the plaintiff must file the summons and complaint concurrently." 398 F. Supp. 2d at 1333 (citing section 2632(a)).  Plaintiff's failure to file a concurrent summons and complaint that alleged section 1581(i) jurisdiction divested the Court of subject matter jurisdiction over plaintiff's 1581(i) claim.  *Id.*

Likewise, in *Washington Int'l Ins. Co. v. United States*, 138 F. Supp. 2d 1314, 1327 (Ct. Int'l Trade 2001), plaintiff filed a summons initiating a suit under section 1581(a) and thereafter "attempted to bootstrap two 28 U.S.C. § 1581(i) counts onto a 28 U.S.C. § 1581(a) case" in its complaint.  Because plaintiff did not file a summons for "all other actions" listed in the complaint (*i.e.*, its section 1581(i) counts)—"thereby depriving the United States of any notice that it would be sued for these actions"—this Court granted the Government's motion to dismiss for lack of jurisdiction.  *Id.*

And in *Brecoflex Co. v. United States*, 44 F. Supp. 2d 225, *dismissed*, 215 F.3d 1344 (Fed. Cir. 1999), plaintiff filed a timely summons with this Court alleging jurisdiction under 28 U.S.C. § 1581(c).  Thirty (30) days after filing the summons, the plaintiff filed a complaint alleging that jurisdiction was proper under either section 1581(c) or section 1581(i).  *Brecoflex*, 44 F. Supp. at 227.  After concluding that jurisdiction over plaintiff's claim could only be proper under section 1581(i), the Court proceeded to dismiss the claim because plaintiff did not properly commence a section 1581(i) action "by filing concurrently with the clerk of the court a summons and complaint." *Id.* at 228 (citing section 2632(a)).

In *DaimlerChrysler Corp. v. United States*, the Federal Circuit addressed a legally similar, but factually different, scenario.  DaimlerChrysler filed a summons that purported to include 81 Customs' protests, covering a total of 2105 entries, by listing a single protest number in the summons and stating that "{a}dditional protests and entry numbers {are} continued on

15

{the} attached 41 page{ } ... schedule of protests{.}" *DaimlerChrysler*, 442 F.3d at 1316.

However, the schedule omitted seven protests covering more than 400 entries. *Id*.  More than

180 days after receiving notice of the denial of the protests, DaimlerChrysler moved to amend

the summons to include the seven omitted protests and entries. *Id*.

   On appeal, the availability of the trial court's jurisdiction over the omitted protests turned

"on the sufficiency of the summons" because, under 28 U.S.C. § 2632(b), "{a} civil action in the

Court of International Trade under section 515 or 516 of the Tariff Act of 1930 shall be

commenced by filing with the clerk of the court a summons, with the content and in the form,

manner, and style prescribed by the rules of the court." *Id.*  Reasoning that jurisdiction of a

federal court "must appear from distinct allegations, . . . and is not to be established

argumentatively or by mere inference," the Court held that DaimlerChrysler's jurisdictional

allegations were inadequate because its initial pleading failed to identify the seven omitted

protests. *Id.* at 1319 (quoting *Thomas v. Board of Trustees of Ohio State University*, 195 U.S.

207, 218 (1904)).  The Court emphasized that DaimlerChrysler's summons failed to comply with

the essential purpose of initial pleadings: "to put the government on notice" of what decisions are

being contested. *Id.* at 1320.

   28 U.S.C. § 2632(a) is clear: "a civil action in the Court of International Trade shall be

commenced by filing concurrently with the clerk of the court a summons and complaint{.}"

Deacero indisputably has not filed concurrently a summons and complaint alleging section

1581(i) jurisdiction or facts supporting its new claims challenging presidential action.  Unlike the

parties in *Autoalliance*, *Washington International Insurance*, *Brecoflex*, and *DaimlerChryser*,

Deacero has not even attempted to comply with the requirements of section 2632(a) and Rule 3.

Deacero has not alleged any facts in its complaint and summons establishing the Court's section

1581(i) jurisdiction, *see DaimlerChrysler*, 442 F.3d at 1318; it did not put the Government on notice of what issues are being contested before the Court, *see id.* at 1320; and it did not file a summons and complaint concurrently alleging its section 1581(i) claims, in violation of section 2632(a) and Rule 3(a)(3).  Accordingly, Deacero's claims challenging the President's implementation of Section 232 tariffs must be dismissed for lack of jurisdiction.

> C.  Deacero Should Not Be Granted Leave To Amend Because Any Section 1581(i) Claim Is Now Barred By The Statute Of Limitations

Assuming *arguendo* that section 1581(i) could be a proper basis for jurisdiction over Deacero's claims challenging the President's proclamations, Deacero should not be granted leave to amend because any section 1581(i) claim challenging the President's proclamations is barred by the statute of limitations.

USCIT Rule 15(a)(2) provides that a party may amend its own pleading after 21 days of serving it "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  USCIT R. 15(a)(2).  "Nonetheless, leave to amend may be denied if the court finds that," among other reasons, "the amendment would be futile." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1353 (Fed. Cir. 2006).  Amendment would be futile in this case because Deacero's new claims are barred by the statute of limitations.  *See, e.g., Jackson v. United States*, 664 Fed. App'x. 922, 925 (Fed. Cir. Nov. 3, 2016) (per curiam) (affirming denial of motion to amend the complaint because the plaintiff's claims "were either outside the Claims Court's jurisdiction or time-barred, {and} any amendments would have been futile").

28 U.S.C. § 2636(i) provides that an action under section 1581(i) "is barred unless commenced in accordance with the rules of the court within two years after the cause of action first accrues."  28 U.S.C. § 2636(i); *Ford Motor Co. v. United States*, 811 F.3d 1371, 1375 (Fed.

Cir. 2016).  In its opening brief, Deacero argues for the first time that "{t}he implementation of Section 232 tariffs on steel imports from Mexico pursuant to Proclamation 9711, and the extension of the implementation of those tariffs pursuant to Proclamation 9740, were invalid because the President's authority to implement tariffs on Mexico expired under 19 U.S.C. § 1862(c)(1)(B) prior to the implementation of the tariffs and the statutory prerequisites for the exception to the time limitation under 19 U.S.C. § 1862(c)(3) were not met."  Pl. Br. at 11.  But Proclamations 9711 and 9740 were issued on March 22, 2018 and April 30, 2018, respectively, more than three years ago.  *See* Proclamation 9711; Proclamation 9740.  Deacero's new claims are therefore time-barred.

Relation back under USCIT Rule 15(c) cannot save Deacero's claims.  Deacero filed its complaint and summons on December 21, 2020, more than two years after Proclamations 9711 and 9740 were issued.  *See* Compl.; Summons.  Thus, even if Deacero's section 1581(i) claims related back to its original filings (they do not), Deacero's claims remain barred as untimely.  *See C.B. Imports Transamerica Corp. v. United States*, 807 F. Supp. 2d 1350 (Ct. Int'l Trade 2011) (dismissing section 1581(i) claim as time-barred); *United States v. Shabahang Persian Carpets, Ltd.*, 963 F. Supp. 1207, 1211 (Ct. Int'l Trade 1997) (dismissing as time-barred takings claim challenging Executive Order predicated on section 1581(i) jurisdiction).  Because Deacero's challenge to Proclamations 9711 and 9740 is barred by the two-year statute of limitations, leave to amend should not be permitted.  *See W. Travel, Inc. v. United States*, 30 C.I.T. 591, 591 (2006) (reasoning that amendment "would be futile as the statute of limitations has run{.}").

D.  Assuming This Court Possesses Jurisdiction Over Deacero's Claims Challenging Presidential Action, Those Claims Should Be Dismissed For Failure To State A Claim

Regardless of whether Deacero has properly invoked section 1581(i) jurisdiction (it has not), Deacero's claims challenging the President's implementation of Section 232 tariffs on Mexican steel imports should be dismissed for failure to state a claim.

As an initial matter, Deacero's claims challenging the President's actions are not properly before the Court because they are not pleaded in Deacero's complaint.  USCIT Rule 8(a)(2) requires that a claim for relief contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To comply with Rule 8(a)(2), pleadings must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citation and quotation omitted).  "The complaint, as opposed to some other brief or court filing, must be the document to contain the plain statement of the claim."  *Milo & Gabby LLC v. Amazon.com, Inc*., 693 F. App'x 879, 892 (Fed. Cir. 2017) (citing Rule 8); *see Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs . . . .").

Having failed to allege any facts in its complaint directly challenging the President's Section 232 tariffs, or even mentioning any other claim beyond its claim challenging Commerce's Final Results, Deacero's new claim should be dismissed for failure to state a claim. *See, e.g.*, *Husteel Co. v. United States*, 375 F. Supp. 3d 1317, 1322 (Ct. Int'l Trade 2019) (dismissing claim where complaint's allegations denied other parties fair notice of the scope of plaintiff's claim); *Milo & Gabby*, 693 F. App'x at 892 (affirming dismissal of claim not raised in the complaint, but alleged for the first time in response briefing).

Even if Deacero had adequately pleaded these allegations, they lack merit and should be dismissed.  Deacero argues that the implementation of tariffs on imports of steel products from Mexico did not comply with 19 U.S.C. § 1862(c)'s time limits.  Pl. Br. at 11-12.  But this Court has already rejected that argument on two occasions. *Universal Steel Prod., Inc. v. United States*, 495 F. Supp. 3d 1336, 1352-54 (Ct. Int'l Trade 2021), *appeal docketed*, No. 21-1726 (Fed. Cir. Mar. 10, 2021) (concluding that the tariffs imposed on Mexican stainless steel complied with Section 232's timing provisions); *Maple Leaf Marketing Inc. v. United States et al.*, Slip Op. 21-77, 2021 WL 2557798, at *6 (Ct. Int'l Trade June 22, 2021) (holding that the President's implementation of tariffs on Canadian and Mexican steel imports were timely and authorized).

Indeed, within the 90-day and 15-day time limits prescribed by 19 U.S.C. § 1862(c)(1)(A) and (B), the President issued Proclamations 9705 and 9711.  *See* Proclamation 9705; Proclamation 9711.  In Proclamation 9705, the President imposed a 25 percent tariff on steel imports from all countries except Canada and Mexico while "ongoing negotiations" with those two countries ensued.  Proclamation 9705, ¶¶ 8, 11.  In Proclamation 9711, the President announced that discussions with Mexico, among other countries, were continuing, and he "determined that the necessary and appropriate means to address the threat to the national security posed by imports from steel articles from these countries is to continue these discussions and to exempt steel articles imports from these countries from the tariff, at least at this time." Proclamation 9711, ¶ 4. The President proclaimed that the temporary tariff exemption would automatically expire on May 1, 2018, at which time the tariff imposed by Proclamation 9705 would take effect if an agreement with Mexico was not reached.  *Id*. ¶ 11 (unless an agreement is reached, "the tariff set forth in clause 2 of Proclamation 9705 shall be effective May 1, 2018{.}").

"{T}he 'nature and duration' of the action the President deems necessary to adjust imports may be a contingent tariff." *Maple Leaf Marketing*, 2021 WL 2557798, at *6 (citing 19 U.S.C. § 1862(c)(1)(A)(ii)).  As this Court correctly observed, "{n}othing in the statute purports to limit the President's authority to act without contingencies; to the contrary, the broad grant of authority under 19 U.S.C. § 1862(c)(1) empowers the President to exercise his judgment and determine the nature of the action necessary to adjust imports that threaten the national security." *Id.* at *7.  Further, subsection (c)(3)(A) of the statute explicitly grants the President authority to negotiate agreements which limit or restrict the importation into the United States of the article that threatens to impair national security.  19 U.S.C. § 1862(c)(3)(A)(i).  If no agreement is reached within 180 days, the President must take such other actions as the President deems necessary.  *Id.* § 1862(c)(3)(A)(ii).  Accordingly, the President took initial action and "implement{ed} that action," *i.e.*, imposed a contingent tariff and temporarily exempted Mexico from that tariff while negotiations ensued, within the time parameters prescribed by Section 232.

Deacero wrongly contends that Proclamation 9711 is untimely because Mexico and Canada were temporarily exempt from the tariffs until May 1, 2018 while negotiations with those countries were underway.  *See* Pl. Br. at 12, 15, 19 (arguing that the tariff was not effective until after Section 232's timing provisions and, therefore, was untimely).  Nor does it matter that Proclamation 9740 extended the temporary exemption until June 1, 2018.  *See* Pl. Br. at 12; Proclamation 9740, clause 3 ("The exemption afforded to steel articles from . . . Mexico . . . shall apply only to steel articles . . . entered for consumption, or withdrawn from warehouse for consumption, through the close of May 31, 2018.").  The President indisputably implemented a contingent tariff within the 90-day and 15-day time provisions.  *See Maple Leaf Marketing*, 2021 WL 2557798, at *6.  That the *effective date* of the Section 232 tariff with respect to Mexico was

contingent on pending negotiations does not change the fact that the President still *implemented*

action within the statute's timeframes.  As stated above, if the action taken by the President is the

negotiation of an agreement, the President may negotiate for at least 180 days before he is

required to "take such other actions as the President deems necessary to adjust the imports of

such article so that such imports will not threaten to impair the national security."  *See* 19 U.S.C.

§ 1862(c)(3)(A).  As this Court correctly reasoned in *Universal Steel*, "{b}ecause the tariffs that

the President imposed upon Mexico, Canada, and the EU took effect on June 1, 2018, which was

well within 180 days of March 8, 2018, these measures were not in violation of the statute." 495

F. Supp. 2d at 1354.

Deacero acknowledges that the President is permitted to impose tariffs and pursue

negotiations under Section 232.  Pl. Br. at 13-14.  But it argues that "by taking 'action' to

implement tariffs along with the 'action' to engage in negotiations, the action to implement

tariffs became subject to the 90-day plus 15-day time limitation prescribed by the statute because

it was neither a response to a failure to reach an agreement or an agreement not being effective."

Pl. Br. at 14.  These arguments mischaracterize the President's actions and Section 232's text.

As this Court held in *Maple Leaf Marketing*, the President implemented the contingent

tariff on Mexican steel imports within the 90-day and 15-day time limits.  *Maple Leaf Marketing*,

2021 WL 2557798, at *6.  Subsection (c)(1)(A)(ii)'s broad language granting the President

authority to "determine the nature and duration of the action that, in the judgment of the

President, must be taken" allows the President to determine, in his judgment, that "the nature and

duration" of the appropriate action is to impose contingent tariffs on Canada and Mexico while

negotiations ensue.  *See id.* at *7.  Indeed, Deacero concedes that the President took timely action

against Mexico and Canada by imposing the 25 percent tariff in Proclamation 9711.  Pl. Br. at 14.

In addition to imposing the tariff, in Proclamations 9705 and 9711, the President explicitly stated that he was negotiating with Mexico.  Proclamation 9705, ¶¶ 10, 11; Proclamation 9711, ¶ 4; *see* Pl. Br. at 14 (acknowledging that the President said "discussions were appropriate.").  "Given that the action that the President chose with respect to {Mexico}{} was to attempt negotiations, the statute grants him the authority to modify that action if negotiations fail to be successful within 180 days." *Universal Steel*, 495 F. Supp. 3d at 1354; § 1862(c)(3)(A).  When no agreement was reached, it was within the ambit of the President's statutory authority to let a temporary exemption expire, allowing the 25 percent tariff to go into effect with respect to Mexican steel imports within the 180-day window.  *See* 19 U.S.C. § 1862(c)(3)(A).

And contrary to Deacero's allegations, the President's action in allowing the temporary exemption to expire was clearly in response to failed negotiations with Mexico.  *See* Proclamation 9711, ¶¶ 4, 11; Proclamation 9740, ¶ 6 and clause 3.  In Proclamation 9711, the President plainly stated that the exemption was "temporary" and unless he determined "by further proclamation that the United States has reached a satisfactory alternative means to remove the threatened impairment to the national security by imports of steel articles from" Mexico, among other countries, "the tariff set forth in clause 2 of Proclamation 9705 shall be effective May 1, 2018."  Proclamation 9711, ¶ 11.  When no "satisfactory alternative means to remove the threatened impairment" was reached with Mexico, the tariffs imposed in Proclamation 9705 automatically went into effect on June 1, 2018, when the temporary exemption expired.  *See* Proclamation 9711, clauses 1 and 4; Proclamation 9740, ¶ 3.

Deacero also argues that the President "bypassed" Section 232's time limits by using the term "discussions" instead of "negotiations"—another argument that was rejected by this Court in *Universal Steel*, and which finds no support in the law. *See Universal Steel,* 495 F. Supp. 3d at 1354 n. 20 (reasoning that "'continuing discussions to discuss satisfactory alternative means' is in essence the definition of negotiation."). It is hard to imagine how the President could have been clearer that he was undertaking negotiations with several countries, including Mexico.

The President welcomed any country with which the United States has a security relationship to discuss *alternative ways* to address the threat to national security. Proclamation 9705, ¶ 9. The President determined that "Canada and Mexico present a special case," and he entered into negotiations with both countries. *Id*. ¶ 10. The President declared "that *the necessary and appropriate means to address the threat* to the national security posed by imports of steel articles from Canada and Mexico is to *continue ongoing discussions* with these countries and to exempt steel articles imports from these countries from the tariff, at least at this time." *Id*. (emphasis added). The President stated that the tariff and "*ongoing negotiations* with Canada and Mexico" were necessary to prevent the domestic steel industry from continuing to decline and to prevent "a situation that is fundamentally inconsistent with the safety and security of the American people." *Id*. ¶ 11 (emphasis added). In Proclamation 9711, the President stated that he was continuing "ongoing discussions" with Mexico, among other countries, for the purpose of reaching an agreement on "satisfactory alternative means" to reduce excess steel production and excess steel capacity. Proclamation 9711, ¶ 10. It is thus evident from the language of the proclamations that "the action taken by the President" was "the negotiation of an agreement" to find alternative satisfactory means to address the threat to national security imposed by Mexican steel imports. *See* § 1862(c)(3)(A)(i).

Deacero cites no authority in support of its "form over substance" argument that the President must explicitly say "negotiations" (rather than discussions) before he may invoke his negotiation powers.  Deacero's argument is particularly perplexing because the President *did* use the word "negotiations" in Proclamation 9705.  *See* Proclamation 9705, ¶ 11.  Regardless, Section 232 does not require that the President recite any particular provisions of the statute before taking action.[3]

For these reasons, assuming *arguendo* that the Court possesses jurisdiction over Deacero's challenge to the President's imposition of Section 232 tariffs on Mexican steel imports (it does not), and assuming this claim is not barred by the statute of limitations (it is), the claim should be dismissed for failure to state a claim upon which relief can be granted.

II.    Commerce's Determination To Deduct Section 232 Duties From Deacero's Constructed Export Price Is Supported By Substantial Evidence And In Accordance With Law

A.  Standard Of Review Applicable To Motions For Judgment On The Agency Record

This Court sustains any determination, finding, or conclusion by Commerce unless it is unsupported by substantial evidence upon the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may also be "less than the weight of the evidence," and the possibility of

---

[3] Nor is the Court's decision in *Universal Steel* inconsistent with its decision in *Transpacific Steel LLC v. United States*, 415 F. Supp. 3d 1267, 1274 (Ct. Int'l Trade 2019).  *See* Pl. Br. at 17.  The President implemented his initial action with respect to Mexico in Proclamations 9705 and 9711—both of which were issued within the 15-day and 90-day windows.  Section 232 gives the President broad authority to implement contingent tariffs and pursue negotiations.  *See* § 1862(c)(1)(A), (c)(3)(A).  This case therefore does not implicate *Transpacific Steel* or the President's authority to subsequently modify initial actions.

drawing inconsistent conclusions from evidence upon the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Thus, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted), and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

When the Court examines the lawfulness of Commerce's statutory interpretations, it employs the two-pronged test established in *Chevron*, 467 U.S. at 842-43. The Court first examines "whether Congress has directly spoken to the precise question at issue," and if it has, the agency must comply with Congress's clear intent. *Id*. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. In such cases, "{a}ny reasonable construction of the statute is a permissible construction," *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004) (citation and quotation marks omitted), and Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *Eurodif*, 555 U.S. at 316 (citation omitted). The Court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11. Indeed, "the whole point of *Chevron* is to leave the discretion provided by the

ambiguities of a statute with the implementing agency." *Eurodif*, 555 U.S. at 316 (citation and quotation marks omitted).

Finally, this Court affords Commerce an especially great deal of deference "when a statute fails to make clear 'any Congressionally mandated procedure or methodology for assessment of the statutory tests.'" *JBF RAK LLC v. United States*, 790 F.3d 1358, 1363 (Fed. Cir. 2015) (quoting *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996)).  In that circumstance, "Commerce 'may perform its duties in the way it believes most suitable.'" *Id.* (quoting *U.S. Steel Grp.*, 96 F.3d at 1362).  Consequently, Commerce receives "tremendous deference" that is "both greater than and distinct from that accorded the agency in interpreting the statutes it administers" when it exercises its technical expertise to select and apply methodologies to implement the dictates of the trade statute. *Fujitsu General, Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996).

> B.  Commerce's Determination Is Consistent With The Antidumping Duty Statute And The President's Proclamations

Commerce determined that Section 232 duties constitute "United States import duties" under the antidumping statute and deducted them from Deacero's United States price.  IDM at 11-13.  Deacero argues that Commerce's interpretation of the statute is inconsistent with the Federal Circuit's analysis in *Wheatland Tube*, 495 F.3d at 1363.  Pl. Br. at 21-31.  As explained below, Deacero is wrong.

It goes without saying that Section 232 duties are import duties, and the phrase "United States import duties" is broad, as this Court noted in *Borusan*, 494 F. Supp. 3d at 1375.  As Commerce explained, "reducing U.S. EP {export price} and CEP {constructed export price} by the amount of reported section 232 duties in the context of this administrative review is

consistent with{the text of section 1677a(c)(2)(A)}. . . because it instructs Commerce to adjust EP and CEP for" United States import duties.  IDM at 12.

Moreover, in establishing the Section 232 duties, the President explicitly said that the new tariff heading "sets forth the *ordinary* customs duty treatment" applicable to steel imports, and that all antidumping duties shall continue to be imposed *in addition to* Section 232 duties. Proclamation 9705, clause 2 and Annex (emphasis added).  Thus, not only is Commerce's interpretation consistent with the plain language of the antidumping statute, but it is consistent with the President's proclamations.  Deacero provides no arguments to the contrary.

Further, Commerce's determination is consistent with *Wheatland Tube.*  "{S}ection 232 duties are not akin to {special} antidumping or section 201 duties" because Section 232 duties serve a different purpose, do not have a statutorily-imposed duration, and there is no risk of double counting antidumping and Section 232 duties.  IDM at 11-12; PDM at 12.  Indeed, this Court already held that Commerce's determination in this regard is reasonable due to "crucial difference between Sections 201 and 232," and Commerce's determination in this case should be sustained for the same reasons.  *See Borusan*, 494 F. Supp. at 1376.

C.  Commerce Reasonably Determined That Section 232 Duties Are "United States Import Duties" That Must Be Deducted From Export Price

The goal of Commerce's statutorily prescribed antidumping calculation is to allow Commerce to compare the fair value of the merchandise to the price charged in the United States.  19 U.S.C. § 1677b(a)(1)(B); 19 U.S.C. § 1677a(c)(2); 19 U.S.C. § 1677b(a)(6); *see also, e.g., Apex Exports v. United States*, 777 F.3d 1373, 1374-75 (Fed. Cir. 2015) (holding that "{t}he overall goal {of the antidumping calculation methodology} is to arrange an apples-to-apples comparison between the domestic and foreign price of merchandise.").  Accordingly, both constructed export price and normal value are subject to adjustments "so that they closely reflect

28

the price of subject merchandise at a common point in the chain of commerce." *Id.* at 1374

(citing 19 U.S.C. § 1677b(a)(1)(B); 19 U.S.C. § 1677a(c)(2); 19 U.S.C. § 1677b(a)(6)).

Pertinent here, the antidumping statute directs Commerce to reduce Deacero's

constructed export price by "the amount, if any, included in such price, attributable to any

additional costs, charges, or expenses, and *United States import duties* . . . ." 19 U.S.C.

§ 1677a(c)(2)(A) (emphasis added). The term "United States import duties" is not defined in the

statute, and Commerce's interpretation need only be reasonable to be sustained. *See* 19 U.S.C.

§ 1677a(c)(2)(A); *Timken Co.*, 354 F.3d at 1342; *Wheatland Tube*, 495 F.3d at 1359-60.

Commerce explained that its decision is consistent with the statute's language because

the statute directs Commerce to adjust constructed export price for United States import duties,

and Section 232 duties are indisputably import duties. *See* IDM at 13. Commerce also noted

that the Presidential proclamations contained no exception or indication that Section 232 duties

should not be treated as "United States import duties" under the statute. *See* IDM at 12-13. To

the contrary, the proclamation "states that section 232 duties are to be imposed in addition to

other duties unless expressly provided for in the proclamation." IDM at 12; Proclamation 9705,

clause 2 and Annex; Proclamation 9740, Annex. Indeed, the President explicitly referred to the

Section 232 duties as "ordinary" customs duties, *id.*, supporting Commerce's determination that

"section 232 duties are treated as any other duties." IDM at 12-13; *see* HTSUS, Revision 2,

Chapter 99, subheading 9903.80.01 (Posted Mar. 29, 2018) (table indicating that the rate of duty

for steel imports is the duty provided in the regular, applicable subheading plus 25%).

Commerce's interpretation of the phrase "United States import duties" is reasonable and is

entitled to deference because it is consistent with the broad language of the statute and with the

President's proclamations. *See, e.g.*, *Zenith Electronics Corp. v. United States*, 77 F.3d 426, 430

(Fed. Cir. 1996) (the Court must interpret an ambiguous statute "with deference to Commerce's interpretation. . . .").

D.  <u>Commerce's Interpretation Is Consistent With *Wheatland Tube*</u>

Deacero's primary argument is that Commerce's interpretation is inconsistent with *Wheatland Tube*. *See* Pl. Br. at 21-31.  But this Court already sustained Commerce's analysis distinguishing Section 232 duties from the duties at issue in *Wheatland Tube*, and Deacero's arguments are, therefore, unavailing.  *See Borusan*, 494 F. Supp. 3d at 1374-76.  Nonetheless, we address Deacero's arguments.

As an initial matter, Commerce's interpretation of the phrase "United States import duties" as not including antidumping duties has been consistently sustained.  *See AK Steel Corp. v. United States*, 988 F. Supp. 594, 607 (Ct. Int'l Trade 1997); *Hoogovens Staal BV v. United States*, 4 F. Supp. 2d 1213, 1220 (Ct. Int'l Trade 1998); *U.S. Steel Group*, 15 F. Supp. 2d at 898-900; *Bethlehem Steel Corp. v. United States*, 27 F. Supp. 2d 201, 208 (Ct. Int'l Trade 1998); *see also Wheatland Tube*, 495 F.3d 1355.

In *Wheatland Tube*, the Federal Circuit sustained Commerce's interpretation of the same phrase as also not including Section 201 safeguard[4] duties.  495 F.3d at 1355-60.  In comparing Section 201 duties with antidumping duties, the Federal Circuit made the following observations:

> (1) "{l}ike antidumping duties, {Section} 201 safeguard duties are remedial duties that provide relief from the adverse effects of imports;"
>
> (2) "{n}ormal customs duties, in contrast, have no remedial purpose;"

---

[4] Section 201, 19 U.S.C. § 2251, "permits the President of the United States to impose safeguard duties on imported merchandise if the merchandise 'is being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or the threat thereof, to the domestic industry producing an article like or directly competitive with the imported article.'"  *Wheatland Tube*, 495 F.3d at 1357 (quoting § 2251).

(3) "antidumping duties and {section} 201 safeguard duties, unlike normal customs duties, are imposed based on almost identical findings that domestic industry is being injured or threatened with injury due to the imported merchandise;" and

(4) "{Section} 201 safeguard duties are like antidumping duties . . . because they provide only temporary relief from the injurious effects of imports," whereas normal customs duties "have no termination provision, and are permanent unless modified by Congress."

495 F.3d at 1362-63.  The Federal Circuit also held that "{t}o assess both a safeguard duty and an antidumping duty on the same imports without regard to the safeguard duty, would be to remedy substantially overlapping injuries twice."  *Id.* at 1365.

After a thorough analysis, Commerce determined that Section 232 duties are not akin to Section 201 or antidumping duties.  IDM at 11-13; PDM at 12-14; *see also Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 19,153, 19,159 (Dep't of Commerce Apr. 12, 2004) (*Stainless Steel Wire Rod from Korea*) ("Although the {antidumping duty} law does not define the term 'United States import duties,' the Senate Report that accompanied the Antidumping Act of 1921 (the '1921 Act') contrasts antidumping duties (which it refers to as 'special dumping duties') with normal customs duties (which it refers to as 'United States import duties'). . . .  Thus, Congress has long recognized that at least some duties implementing trade remedies—including at least antidumping duties—are special duties that should be distinguished from ordinary customs duties.")) (citing S. Rep. No. 67-16 at 4 (1921)); *see also Certain Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 61,649 (Dep't of Commerce Oct. 20, 2004).

*First*, in *Wheatland Tube*, "Commerce found that antidumping duties and § 201 safeguard duties, unlike normal customs duties, are imposed based on almost identical findings that

domestic industry is being injured or threatened with injury due to the imported merchandise."
495 F.3d at 1362.  Deacero argues that "Commerce's focus on Section 232's national security
purpose is misplaced" because Section 232 tariffs "remedy some type of harm to the domestic
injury."  Pl. Br. at 24.  But even if Section 232 might be considered remedial in a "broad sense,"
*Borusan*, 494 F. Supp. 3d at 1374, Section 232 duties are not imposed *because* a domestic
industry is being injured or threatened.  *See* IDM at 12; *Stainless Steel Wire Rod from Korea*, 69
Fed. Reg. at 19,159 (finding that Section 201 duties were similar to antidumping duties and
therefore special remedial duties because they are intended to provide "temporary relief for an
industry suffering from serious injury.").  Section 232 duties are imposed to address imports that
threaten to impair the national security, *see* 19 U.S.C. § 1862; IDM at 12, and can be "used to
promote vital nascent industries, not just already established injured industries," *Borusan*, 494 F.
Supp. 3d at 1374.  While an *effect* of the President's Section 232 duties may be to assist a
weakened domestic injury, the *purpose* of the duties was to alleviate a national security
concern—a purpose much broader than Section 201 or antidumping duties.  *See* IDM at 12.

Proclamation 9705 states that it "is necessary and appropriate to adjust imports of steel
articles so that such imports will not threaten to impair the *national security* . . . ."  Proclamation
9705, ¶ 11 (emphasis added); *see also* IDM at 12 (quoting the text of Section 232).  The
President sought to alleviate the national security risk that our country's steel "industry will
continue to decline, leaving the United States at risk of becoming reliant on foreign producers of
steel to meet our national security needs—a situation that is fundamentally inconsistent with the
safety and security of the American people."  Proclamation 9705, ¶ 11.  Antidumping duties and
Section 201 safeguard measures, on the other hand, are "directed at the same overarching

purpose – protecting the bottom line of domestic producers." *See Wheatland Tube,* 495 F.3d at 1364.

Further, the text of Section 232 concerns itself with "the effects on the *national security* of imports of the article." *See* 19 U.S.C. § 1862(b)(1)(A) (emphasis added). The President may not act to adjust imports *unless* he concurs with the finding of the Secretary that articles are being imported in such quantities or under such circumstances as to threaten to impair the national security. *Id.* § 1862(c). By contrast, for an antidumping duty to be imposed, a domestic industry must be materially injured or threatened with material injury. *Wheatland Tube*, 495 F.3d at 1362. Likewise, Section 201 duties may only be imposed if a domestic producer is experiencing serious injury or threat. *Id.* (citing section 2251). The Federal Circuit stated that normal customs duties can be imposed "regardless of whether the U.S. industry is suffering adverse effects as a result of imports." *Wheatland Tube,* 495 F.3d at 1362. Section 232 duties may be imposed regardless of whether the United States industry is suffering.[5] Thus, Commerce reasonably determined that the law and purpose behind Section 232 duties materially differ from Section 201 safeguard and antidumping duties. *See* IDM at 11-13.

Deacero emphasizes that the Section 232 duties were intended to remedy harms on the domestic industry and protect its viability. Pl. Br. at 25. This argument misses the point. The statute's fundamental concern is national security; it does not prioritize the economic welfare of domestic industries. *See* 19 U.S.C. § 1862 (b)(1)(A) ("the Secretary of Commerce . . . shall

---

[5] For example, President Reagan used his Section 232 authority to embargo oil imports from Libya due to concerns that the Libyan government supported terrorism. *See Presidential Proclamation 4907 of March 10, 1982: Imports of Petroleum*, 48 Fed. Reg. 10,507 (Mar. 10, 1982). Proclamation 4907 was issued without regard to whether United States industries were suffering.

immediately initiate an appropriate investigation to determine the effects on the national security of imports of the article which is the subject of such request, application, or motion.); *id.* § 1862(b)(3)(A) ("the Secretary shall submit to the President a report on the findings of such investigation with respect to the effect of the importation of such article in such quantities or under such circumstances upon the national security"); *id.* § 1862(c)(1)(A)(ii) ("if the President concurs, determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security."). The viability of the domestic steel industry for defense capabilities *is the national security interest* that the President was seeking to address. Proclamation 9705, ¶ 2. Commerce reasonably determined that Section 232 duties are focused on national security concerns, and not on remedying injury to a domestic industry in the same way that Section 201 and antidumping duties are focused. IDM at 11-13.

Deacero claims that Proclamation 9894 "make{s} it clear that the Section 232 duties were imposed to remedy harms associated with dumped and subsidized products," and that the Secretary's report focuses on remedying harms to the domestic industry. Pl. Br. at 25-27. Deacero is correct that in Proclamation 9894, the President declared that "{t}he United States has agreed on a range of measures with Canada and Mexico to prevent the importation of steel articles that are unfairly subsidized or sold at dumped prices, to prevent the transshipment of steel articles, and to monitor for and avoid import surges." Proclamation 9894, ¶ 5. But reaching an agreement to limit the importation of the article that threatens to impair the national security is explicitly contemplated by Section 232, and reaching such an agreement with Mexico does not alter the national-security focus of the statute. The goal of the Secretary's report, and the President's Section 232 tariffs, was to "enable domestic steel producers to use approximately

34

80 percent of existing domestic production capacity and thereby achieve long-term economic viability through increased production."  Proclamation 9705, ¶ 4.  Limiting the importation of dumped and subsidized articles that threaten to impair the national security plainly serves that goal.  Thus, Deacero's references to the underlying Section 232 investigation are without merit because the economic impact on the United States steel industry is just a precursor to the President's ultimate finding that there is a threat to national security.

While the Court in *Borusan* disagreed with some of Commerce's analysis, it ultimately concluded that Commerce's reasoning was logical because there are material differences between Section 232 and Section 201 duties.  *See* 494 F. Supp. 3d at 1374.  Thus, Deacero's attempts to equate Sections 201 and 232 are unpersuasive.

*Second*, in *Wheatland Tube*, the Federal Circuit sustained Commerce's reasoning that Section 201 and antidumping duties provide "only temporary relief from the injurious effects of imports" unlike normal customs duties.  495 F.3d at 1362.  Section 201 duties are generally limited to four years, and antidumping duty orders provide for a termination after five years, with some exceptions.  *Id.* (citing 19 U.S.C. §§ 2251 and 1675).  "Normal customs duties, however, have no termination provision and are permanent unless modified by Congress."  *Id.*  Section 232 does not have a termination provision.  To the contrary, Congress granted the President discretion to determine the duration of Section 232 duties.  *See* 19 U.S.C. § 1862(c) (providing that the President "shall…determine the nature and *duration of the action that*…must be taken to adjust the imports…so that such imports will not threaten to impair the national security.") (emphasis added).  In contrast, antidumping and Section 201 duties have a statutory expiration date tied to the cessation of injury.  *See* 19 U.S.C. § 2251; *see also* 19 U.S.C. § 1675(d).  Thus,

Deacero's argument that "Section 232 duties are equally temporary as Section 201 duties" is unavailing. *See* Pl. Br. at 27.

Moreover, Congress did not describe Section 232 duties as "temporary" duties or set a time limit on the duration of these duties, despite doing so for other duties delegated to the President to implement. *See*, *e.g.*, 19 U.S.C § 2132 (providing that "the President shall proclaim, *for a period not exceeding 150 days* (unless such period is extended by Act of Congress) – a *temporary* import surcharge" where problems with international payments arise) (emphasis added).

Deacero suggests that Section 232 duties are temporary because, unlike ordinary customs duties, Section 232 duties are adjusted and changed. Pl. Br. at 27-28. This argument is inconsistent with *Wheatland Tube.* That the duties can be modified or changed at some point does not make them inherently temporary in the same way antidumping and Section 201 duties are temporary. Normal customs duties "have no termination provision and are permanent *unless modified by Congress*." *Wheatland Tube*, 495 F.3d at 1362 (emphasis added). Congress delegated broad authority and discretion to the President to determine the duration of Section 232 duties; Section 232 has no termination provision; and the duties are permanent unless modified by the President. The point is: Section 232 provides no express time-limit on the imposition of duties.[6]

*Finally*, in *Wheatland Tube*, because section 201 safeguard and antidumping duties effectively treat the same injury, Commerce found that deducting Section 201 duties from United

---

[6] We recognize that the Court found that "lack of permanence is not a viable reason to distinguish Section 201 duties from Section 232 duties." *Borusan*, 494 F. Supp. 3d at 1374-75. Notwithstanding the Court's reasoning, however, the Court sustained Commerce's determination to treat Section 232 duties as United States import duties, *id*. at 1375-76, and the Court should do so here as well.

States price could improperly result in the collection of Section 201 duties twice.  495 F.3d at

1362-63.  As explained by Commerce in *Stainless Steel Wire Rod from Korea*, the Statement of

Administrative Action accompanying the 1921 Act states that "{i}n determining whether to

provide {Section 201} relief, and, if so, in what amount, the President will continue the practice

of taking into account relief provided under other provisions of law, such as the antidumping"

law.  69 Fed. Reg. at 19,160 (quoting Statement of Administrative Action, H.R. Doc. No. 103-

316, Vol. 1, at 964 (1994) reprinted in 1994 U.S.C.C.A.N. 3773).  Congress explicitly intended

that the President would take into account any potential overlap between Section 201 and

antidumping duties when setting the level of Section 201 duties.  *Id.*

In contrast, there is no similar authority demonstrating Congress's intent that the

President would take into account potential overlap between Section 232 and antidumping

duties.  In this case, the President directed that Section 232 duties should be applied in addition

to "any other duties, fees, exactions, and charges applicable to such imported steel articles{.}"

Proclamation 9705, clause 2.  The Federal Circuit recently acknowledged that the President's

Section 232 tariffs are to be applied "on top of already-applicable antidumping or countervailing

duties."  *See Am. Inst. for Int'l Steel, Inc. v. United States*, 806 F. App'x. 982, 986 (Fed. Cir.

2020).  Commerce was properly concerned about double-counting in *Wheatland Tube* because

the legislative history indicated that Congress intended the President to take antidumping duties

into account when setting Section 201 duties.  No similar concerns are present here.

Commerce correctly disagreed that "deducting section 232 duties from the U.S. price

risks imposing a double remedy."  IDM at 13.  Section 232 duties are not limited to addressing

injury, material or otherwise, to the relevant domestic industry caused by imports.  *See* 19 U.S.C.

§ 1862.  The focus of Section 232 duties is much different in that it addresses "the capacity of the

United States to meet national security requirements." *Id.*  Unlike the similarity in purpose and function of antidumping and Section 201 duties, Section 232 actions to "adjust imports" are not limited to addressing the injury to industries caused by import surges or unfairly traded imports. This Court in *Borusan* agreed with Commerce that "{t}here is a clear statutory interplay between Section 201 duties and antidumping duties, while Section 232 does not reveal any such coordination concerns."  *Borusan*, 494 F. Supp. 3d at 1375-76.

Deacero contends that "since Section 232 duties have already been collected with respect to imports of rebar during the period of review, deducting such duties from U.S. price would mean that the same duties will be collected a second time in the form of increased duty assessments on imports during the period of review."  Pl. Br. at 30.  Deacero is wrong, and its reasoning would allow importers to circumvent the Section 232 duty on the back end.  If Commerce did not deduct Section 232 duties from United States price, then Deacero would benefit from an inflated constructed export price, thereby reducing its antidumping margin, and rendering the Section 232 duty effectively useless.  And, if Deacero were right, then Commerce would be prevented from deducting any United States import duty from constructed export price, contrary to the clear requirements of section 1677a(c)(2)(A).

Deacero also complains that Commerce did not provide a reasoned explanation on the double-counting issue.  Pl. Br. at 28-29.  This argument is misplaced.  Commerce provided adequate reasons for why it determined that Section 232 duties are different from Section 201 duties such that *Wheatland Tube* does not command a different result.  IDM at 11-13. Specifically, Commerce noted that the President's proclamations explicitly require the imposition of Section 232 duties "in addition to" antidumping duties, and Section 232 duties are uniquely concerned with national security.  *Id.*  Moreover, the factors in *Wheatland Tube* are just

that—factors.  Indeed, this Court's reasoning in *Borusan* recognizes that all of the factors in *Wheatland Tube* need not be satisfied, let alone analyzed in excruciating detail, in order for Commerce's determination to be sustained.  *See Borusan*, 494 F. Supp. 3d at 1375 (finding that the "lack of permanence is not a viable reason to distinguish Section 201 duties from Section 232 duties.").

The question before the Court is whether the phrase "United States import duties" contained in *the antidumping statute*—which governs Commerce's administration of antidumping duties—encompasses Section 232 duties such that Commerce is *required* to deduct them.  Articulated a different way by this Court, the pertinent questions are: "what is the purpose of the deduction for 'import duties' in the dumping margin calculation, and does reduction of price by Section 232 duties serve that purpose."  *Borusan*, 494 F. Supp. 3d at 1373.  Commerce strives to ensure that the basis for normal value in its antidumping proceedings reflects a United States price that is fully built up to include movement expenses.  *See* 19 U.S.C. § 1677b(a); *see also Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed. Cir. 1995) (providing that the statutory framework "seek{s} to produce a fair 'apples-to-apples' comparison between foreign market value and United States price").  In furtherance of that purpose, the broad language of the statute covers all "United States import duties." 19 U.S.C. § 1677a(c)(2)(A).  Record evidence demonstrates Section 232 duties are included in Deacero's United States price, and Deacero does not argue otherwise.  *See* IDM at 13; *see also* Exhibit V-1; Deacero's B, C Questionnaire Response Part 6 at C-55.  Thus, the normal value accounting for those duties after importation

accurately reflected the costs of moving the subject merchandise into the United States.  *See* 19 U.S.C. § 1677a(c)(2)(A).[7]

In sum, Commerce thoroughly explained why it concluded that Section 232 and 201 duties are different such that *Wheatland Tube* is not controlling, and as this Court determined in *Borusan*, there is simply no overlap between Section 232 and antidumping duties such that double counting is a reasonable concern.  Commerce's interpretation of "United States import duties" to include Section 232 duties is reasonable and in accordance with law because it is consistent with the text of the statute, the President's proclamations, and *Wheatland Tube.*

E.   Deacero's Remaining Arguments Lack Merit

Deacero argues that Commerce's decision "violates longstanding principles of administrative law" because it was impermissibly retroactive and was not subject to notice and comment rulemaking.  Pl. Br. at 31-36.  These arguments, however, demonstrate a misunderstanding of how Commerce administers the antidumping statute.

*First*, deducting Section 232 duties from Deacero's United States price is not an impermissible retroactive change.  In fact, Commerce's decision to deduct Section 232 duties from constructed export price does not involve a change in its calculation methodology or a new regulatory rule at all.  *See* Pl. Br. at 35.  19 U.S.C. § 1677a(c)(2)(A) *requires* Commerce to adjust constructed export price for any additional charges, costs, expenses, and United States

---

[7] It is irrelevant that Commerce ultimately collected the duty after Proclamation 9894 was issued.  *See* Pl. Br. at 31.  Commerce is collecting duties that Deacero was required to pay *during the period of review*, prior to the proclamation's issuance.  Indeed, as Commerce noted, "there is no dispute among parties with regard to record evidence that the amount of section 232 duties was included in the price paid by Deacero's U.S. customers" during the period of review.  IDM at 13.  Thus, it is unclear what Deacero is complaining about in this regard.  Antidumping duties, for example, are often collected after a period of review ends, but for which the importer was required to pay during the period of review.

import duties.  Once Commerce determined that Section 232 duties were "United States import duties" within the meaning of the statute, it deducted those duties—as it must and as it always has—from Deacero's constructed export price.  Commerce did not alter its methodology.[8]

Deacero also ignores the President's proclamations, which explicitly state that Section 232 duties are "in addition to any other duties," and that "{a}ll antidumping, countervailing, or other duties and charges applicable to such goods shall continue to be imposed."  *See* Proclamation 9705, clause 2 and Annex; Proclamation 9740, Annex; IDM at 12.  Commerce cannot disregard the President's instructions.  As Commerce recognized, the proclamations referred to Section 232 duties as "ordinary" customs duties.  *Id.*  Thus, Commerce's decision to deduct Section 232 duties from United States price is a reasonable interpretation of the plain language of the President's proclamations.

Deacero claims "that most members of the trading public would have assumed" that Section 232 duties would not be deducted from United States price because of the Federal Circuit's holding in *Wheatland Tube*, and that importers would have "no time to make commercial adjustments to account for such duties."  Pl. Br. at 36.  This argument misses the mark.  In both the Preliminary[9] and Final Results, Commerce acknowledged the Federal Circuit's holding in *Wheatland Tube*, but reasonably determined that Section 232 duties were not

---

[8] For the same reasons, *ALZ N.V. v. United States*, 283 F. Supp. 2d 1302 (Ct. Int'l Trade 2003), *dismissed*, 114 F. App'x 401 (Fed. Cir. 2004), is not on point.  *See* Pl. Br. at 35.  In *ALZ,* Commerce retroactively applied amended countervailing duty regulations that were not in effect when the original petition for investigation was filed.  Here, by contrast, Commerce is not retroactively applying an amended law or regulation; it is applying a longstanding statutory requirement to deduct United States import duties from constructed export price for purposes of calculating a dumping margin.

[9] Deacero was on notice from the Preliminary Results that Commerce intended to deduct Section 232 duties from its United States price and it, therefore, had ample opportunity to "adjust{.}"  *See* Pl. Br. at 36.

akin to Section 201 duties such that *Wheatland Tube* governed the outcome.  PDM at 12-13;

IDM at 11-13.  Commerce did not impose an unforeseeable financial liability on Deacero simply

because Deacero "assumed" Section 232 duties would not be deducted from United States price.

*See* Pl Br. at 36.  Commerce performed its statutory obligation to calculate an antidumping

margin by deducting Section 232 duties.

Even if Commerce's decision to deduct Section 232 duties was a methodological change

(it is not), this change would still be permissible despite its retroactive effect.  Contrary to

Deacero's arguments that retroactive changes are not allowed, this Court has explained that

"{c}hanges in methodology, like all other antidumping review determinations, permissibly

involve retroactive effect."  *Koyo Seiko Co. v. United States*, 516 F. Supp. 2d 1323, 1334 (Ct.

Int'l Trade 2007) (citing 19 U.S.C. § 1675(a)(2)).  Indeed, "{applying} changes prospectively

would hinder {Commerce's} ability {to} change its own practices and directly undermine the

statutory preference for retrospective application of antidumping review determinations."  *Id*.

"In general, an agency may deviate from a past practice when 'the new policy is permissible

under the statute, ... there are good reasons for it, and ... the agency believes it to be better, which

the conscious change of course adequately indicates.'"  *Huvis Corp. v. United States*, 570 F.3d

1347, 1353 (Fed. Cir. 2009) (quoting *FCC v. Fox Television Stations, Inc*., 129 S. Ct. 1800, 1811

(2009)).  Just because Deacero is uncertain as to what its dumping margin will be until after an

administrative review is completed in no way undermines Commerce's decision to deduct

Section 232 duties from United States price, it is just a byproduct of what is inherently a

retrospective system.

*Second*, Commerce's antidumping methodology is not an administrative rule subject to

notice and comment rulemaking under the Administrative Procedure Act (APA).  *See* 5 U.S.C.

§ 551(4); *see also* 5 U.S.C. § 564(a).  The APA requires agencies, including Commerce, to give

interested parties notice and an opportunity to comment on proposed rulemaking.  *See Foshan*

*Shunde Yongjian Housewares & Hardware Co. v. United States*, 896 F. Supp. 2d 1313, 1324

(Ct. Int'l Trade 2013).  Rulemaking under the APA is defined as the agency's "process for

formulating, amending, or repealing a rule," and a rule is defined as "an agency statement of

general or particular applicability and future effect designed to implement, interpret, or prescribe

law or policy . . . ."  5 U.S.C. § 551(4)-(5).  The APA's notice and comment requirement

"applies to legislative rules and does not apply to 'interpretive rules, general statements of

policy, or rules of agency organization, procedure, or practice.'" *Apex Frozen Foods Private Ltd.*

*v. United States*, 144 F. Supp. 3d 1308, 1319-1320 (Ct. Int'l Trade 2016) (citing 5 U.S.C.

§ 553(b)(A)), *aff'd*, 862 F.3d 1337 (Fed. Cir. 2017).  The Court stated in *Apex* that:

> While not binding on this Court, the court notes that the
> Court of Appeals for the D.C. Circuit has aptly addressed
> how to determine whether an agency rule is a legislative rule
> that must undergo notice and comment rulemaking by asking
> the following:  (1) whether in the absence of the rule there
> would not be an adequate legislative basis for enforcement action
> or other agency action to confer benefits or ensure the performance
> of duties, (2) whether the agency has published the rule in the
> Code of Federal Regulations, (3) whether the agency has explicitly
> invoked its general legislative authority, or (4) whether the rule
> effectively amends a prior legislative rule.

*Apex*, 144 F. Supp. 3d at 1320 (*citing Am. Mining Cong. v. Mine Safety Admin.*, 995 F.2d 1106,

1112 (D.C. Cir. 1993)).

Commerce's decision to deduct Section 232 duties from Deacero's United States price is

not a rule subject to notice and comment requirements.  This Court has repeatedly ruled that

notice and comment procedures "'do not apply to antidumping administrative proceedings,'

which mostly involve fact-based, investigative activities."  *See Jiaxing Brother Fastener Co. v.*

*United States*, 961 F. Supp. 2d 1323, 1331 (Ct. Int'l Trade 2014) (quoting *GSA, S.r.l. v. United States*, 77 F. Supp. 2d 1349, 1359 (Ct. Int'l Trade 1999)); *JTEKT Corp. v. United States*, 768 F. Supp. 2d 1333, 1347-48 (2011) (rejecting argument that Commerce must conduct APA rulemaking procedure to change a methodology applied in its antidumping proceedings); *Foshan*, 896 F. Supp. 2d at 1324; *Cf. Shakeproof Assembly Components, Div. of Illinois Tool Works, Inc. v. United States*, 268 F.3d 1376, 1381 (Fed. Cir. 2001) ("Even where Commerce has not engaged in notice-and-comment rulemaking, its statutory interpretations articulated in the course of antidumping proceedings draw *Chevron* deference.").

Moreover, the deduction is part of Commerce's *existing* statutory obligation to deduct United States import duties from respondents' constructed export price based on Commerce's reasonable interpretation of an ambiguous statutory term. *See Jiaxing Bro. Fastener*, 961 F. Supp. 2d at 1331 (investigative determination carried out pursuant to existing policies and regulations is not a rulemaking action subject to the APA's notice and comment requirements); *Foshan*, 896 F. Supp. 2d at 1323-24 (determination made during the administrative proceeding was "based on existing policies and regulations—not an implementation of a new policy or practice," and therefore was not subject to notice and comment procedures).

Deacero's argument is premised on the assumption that Commerce deviated from prior practice. *See* Pl. Br. at 33 (arguing that a change in the law requires notice and comment rulemaking). Again, Commerce's decision to deduct United States import duties (including Section 232 duties) from Deacero's United States Price is not a change in the law; this procedure is, and has been, required by the antidumping statute. 19 U.S.C. § 1677a(c)(2)(A). And even if it were a change, Deacero is still wrong. As explained above, and as Deacero acknowledges on page 36 of its brief, Commerce need only provide adequate reasoning for changing its

methodology.  *See JTEKT Corp.*, 768 F. Supp. 2d at 1348.  Commerce fully explained its

rationale and it was not required to undertake notice-and-comment rulemaking procedures to

deduct Section 232 duties from Deacero's United States price.

CONCLUSION

For these reasons, we respectfully request that the Court dismiss Deacero's claims

challenging presidential action, deny Deacero's motion for judgment on the agency record, and

sustain Commerce's Final Results.

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ L. Misha Prehim
L. MISHA PREHEIM
Assistant Director

/s/ Ann C. Motto

OF COUNSEL:                                  ANN C. MOTTO
IAN MCINERNEY                                Trial Attorney
Of Counsel                                   U.S. Department of Justice
Office of the Chief Counsel                  Civil Division
for Trade Enforcement and Compliance         Commercial Litigation Branch
U.S. Department of Commerce                  P.O. Box 480
Washington, D.C.                             Ben Franklin Station
                                             Washington, D.C. 20044
                                             Tel: (202) 353-7968
                                             Fax: (202) 305-2062
                                             Email: Ann.C.Motto@usdoj.gov

July 9, 2021                                 *Attorneys for Defendant United States*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 13,691 words, including text, footnotes, and headings.


/s/ Ann C. Motto

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

|  |  |
|---|---|
| _____ ) | |
| DEACERO, S.A.P.I. DE C.V. AND ) | |
| DEACERO USA, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | Court No. 20-03924 |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| REBAR TRADE ACTION COALTION, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____) | |

### ORDER

Upon consideration of plaintiffs' motion for judgment on the agency record, defendant's and defendant-intervenor's responses thereto, defendant's motion to dismiss, plaintiffs' reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' claims challenging the President's proclamations are DISMISSED; and it is further

ORDERED that plaintiffs' motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____          _____

New York, New York                                                        Judge

47