UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

---

**DEACERO S.A.P.I. DE C.V. AND
DEACERO USA, INC.**

   **Plaintiffs,**

v.

**UNITED STATES,**

   **Defendant,**

**and**

**REBAR TRADE ACTION COALITION,**

   **Defendant-Intervenor.**

    **Court No. 20-03924**

---

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO
DEFENDANT-INTERVENORS
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Rosa S. Jeong
Friederike S. Görgens
Sonali Dohale
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
(202) 331-3100 (Phone)
(202) 331-3101 (Fax)

*Counsel for Plaintiffs Deacero S.A.P.I. de
C.V. and Deacero USA, Inc.*

August 6, 2021

*ACTIVE 59232884v1*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

SUMMARY ....................................................................................................................... 1

ARGUMENT .................................................................................................................... 3

I.     DEACERO PROPERLY INVOKED JURISDICTION UNDER 28 U.S.C. §1581(C) ..... 3

II.    THE EXHAUSTION DOCTRINE DOES NOT DICTATE DISMISSAL OF
       DEACERO'S CLAIM .................................................................................................. 8

III.   CASE LAW IS NOT SETTLED ON THE QUESTION OF LEGALITY OF SECTION
       232 DUTIES. ........................................................................................................... 9

IV.    SECTION 232 DUTIES ARE NOT ORDINARY CUSTOMS DUTIES ....................... 11

       A.     This Court's Decision in Borusan Involved a Different Factual and Legal
              Scenario and is Not Dispositive of the Issues in this Case ................................... 11

       B.     Many Aspects of the Court's Analysis in Borusan Support Deacero's Arguments
              in this Case ........................................................................................................ 12

       C.     The Section 232 Duties Imposed on Mexican Imports of Steel Are Remedial and
              Temporary .......................................................................................................... 12

       D.     The Section 232 Duties on Mexico Demonstrate the Practical Interplay Between
              Antidumping/Countervailing and Section 232 Duties .......................................... 13

V.     COMMERCE'S DECISION TO DEDUCT SECTION 232 DUTIES FROM U.S. PRICE
       WITHOUT NOTICE VIOLATES LONGSTANDING PRINCIPLES OF
       ADMINISTRATIVE LAW ........................................................................................ 17

CONCLUSION ................................................................................................................. 19

i

# TABLE OF AUTHORITIES

**CASES**

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021)..................................................................................... 11, 12, 13, 14

*Brecoflex Co. v. United States*, 23 CIT 84, 44 F. Supp. 2d 225 (1999), *dismissed*, 215 F.3d 1344 (Fed. Cir. 1999)...................................................................................................... 6, 7

*Consol. Bearings Co. v. United States*, 25 CIT 546, 553-54, 166 F.Supp. 2d 580 (2001)............. 8

*DaimlerChrysler Corp. v. United States*, 442 F.3d 1313 (Fed. Cir. 2006).................................... 7

*In re PersonalWeb Technologies v. Patreon, Inc.., et al.*, 961 F. 3d 1365 (Fed. Cir. 2020), *petition for cert. docketed*, 19-1918 (April 7, 2021)................................................... 6

*Maple Leaf Marketing Inc. v. United States et al.*, No. 20-00125, 2021 WL 2557798 (Ct. Int'l Trade June 22, 2021)..................................................................................... 9

*Qingdao Maycarrier Imp. Exp. Co. v. United States*, 949 F. Supp. 2d 1335 (Ct. Int'l Trade 2013).............................................................................................. 8

*Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370 (Fed. Cir. 2019) ...................... 4

*Sunpreme Inc. v. United States*, 892 F.3d 1186 (Fed. Cir. 2018) ................................................. 4

*Transpacific Steel LLC v. United States*, No. 20-2157, 2021 WL 2932512 (Fed. Cir. July 13, 2021) ....................................................................................................................... 10

*Universal Steel Prod., Inc. et al v. United States*, 495 F. Supp. 3d 1336 (Ct. Int'l Trade 2021)...................................................................................... 2, 9, 11

*Washington Int'l Ins. Co. v. United States*, 25 CIT 207, 138 F. Supp. 2d 1314 (2001) ............. 5, 6

*Wheatland Tube Co. v. United States*, 495 F.3d 1355 (Fed. Cir. 2007) .......................... 15, 17, 18

*Yanko v. United States*, 869 F.3d 1328 (Fed. Cir. 2017) .............................................................. 8

**STATUTES**

19 U.S.C. § 1516a .......................................................................................................................... 4

19 U.S.C. § 1516a(a)(2) ................................................................................................................. 4

19 U.S.C. § 1516a(a)(2)(A)-(B) .................................................................................................. 5, 7

19 U.S.C. § 1516a(a)(2)(B)(iii) ................................................................................................... 5, 7

19 U.S.C. § 1862(c) ............................................................................................ 10

28 U.S.C. § 1581(c) ...................................................................................... passim

28 U.S.C. § 1581(i) .................................................................................... 4, 7, 8

**OTHER AUTHORITIES**

*Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States*,
   83 Fed. Reg. 11,625 (Mar. 15, 2018)................................................................. 10, 13

*Proclamation 9711 of March 22, 2018 Adjusting Imports of Steel Into the United States*,
   83 Fed. Reg. 13,361 (Mar. 28, 2018)................................................................. 10, 13

*Proclamation 9894 of May 23, 2019 Adjusting Imports of Steel Into the United States*,
   84 Fed. Reg. 23,987 (May 23, 2019) ...................................................................... 16

*Publication of a Report on the Effect of Imports of Steel on the National Security: An
   Investigation Conducted Under Section 232 of the Trade Expansion Act of 1962, as Amended*,
   85 Fed. Reg. 40,202 (Dep't of Commerce July 6, 2020) ........................................ 15

*Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty
   Administrative Review*, 69 Fed. Reg. 19,153 (Apr. 12, 2004) .................................... 17

*Steel Concrete Reinforcing Bar from Mexico: Final Results of Antidumping Duty Administrative
   Review; 2017- 2018*, 85 Fed. Reg. 71,053 (Dep't of Commerce Nov. 6, 2020) ............... 1, 5, 7

*ACTIVE 59232884v1*

## INTRODUCTION

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, U.S. Ct. Int'l Trade R. 56.2, Plaintiffs Deacero S.A.P.I. de C.V. and Deacero USA, Inc. (together, "Deacero") respectfully submit this reply brief in support of their Rule 56.2 Motion for Judgment Upon the Agency Record.

## SUMMARY

Deacero is challenging the U.S. Department of Commerce's ("Commerce") determination in *Steel Concrete Reinforcing Bar from Mexico: Final Results of Antidumping Duty Administrative Review; 2017- 2018*, 85 Fed. Reg. 71,053 (Dep't of Commerce Nov. 6, 2020) ("*Final Results*") (P.R. 211), and accompanying Issues and Dec. Mem. ("Final IDM") (P.R. 192) on the grounds that Commerce's determination to treat Section 232 duties paid by Deacero as ordinary customs duties and deduct them from U.S. price is unsupported by substantial evidence and otherwise not in accordance with law. Deacero made several arguments relating to the interpretation of the underlying legal authority—including an argument that the Section 232 duties at issue in this case were imposed in a manner contrary to law.

In response, Defendant the United States ("Defendant") and Defendant-Intervenor Rebar Trade Action Coalition ("RTAC") argue that Deacero's arguments regarding the validity of the Section 232 duties themselves—a legal prerequisite to the application of Section 232 duties in *any* context—cannot be raised during these proceedings because Deacero failed to invoke proper jurisdiction and failed to exhaust its administrative remedies. As discussed below, their arguments misconstrue the jurisdictional scope of 28 U.S.C. § 1581(c) and (i). Deacero properly invoked 28 U.S.C. § 1581(c) jurisdiction. Deacero's claim is also not barred by the exhaustion doctrine because its arguments regarding the lawfulness of Commerce's conduct—specifically,

its decision to deduct Section 232 duties from U.S. price when such duties were unlawfully imposed—is a pure legal question.

As described below, Deacero is aware of related cases before this Court and the U.S. Court of Appeals for the Federal Circuit ("CAFC") that examine whether various presidential actions implementing Section 232 duties were in accordance with statutory timing provisions. However, two of those cases—*Maple Leaf Marketing* and *Transpacific*—address different legal issues and factual circumstances and are not dispositive authority on the specific issue in this case. While a third case, *Universal Steel*, addresses the same issue Deacero raises here, that case is currently on appeal before the CAFC, and Deacero intends to file a motion to stay any decision by this Court pending a final decision in *Universal Steel*.

Even assuming the Section 232 duties themselves were lawful, Commerce's determination to deduct them from U.S. price in its antidumping duty calculations for Deacero is unsupported by substantial evidence and otherwise not in accordance with law because it is inconsistent with the statutory text and governing law. As described below, this Court's recent decision in *Borusan* should not dictate the outcome in this case because it involved a different country with a different procedural history that led to the implementation of Section 232 duties. In this case, the nature of the imposition and revocation of Section 232 duties on Mexican steel products demonstrates that the duties were intended to be remedial and temporary, and imposed after consideration of the adequacy of existing antidumping measures, presence of dumped and subsidized products from Mexico, and injury to the domestic industry. Moreover, because Commerce has declined to establish an administrative rule of general applicability regarding its view of Section 232 duties, Section 232 duties do not (and should not) need to be treated the same way in all proceedings. If Commerce expected its interpretation concerning Section 232

*ACTIVE 59232884v1*

duties to be treated the same way as its conflicting interpretation of Section 201 duties in *Wheatland*, it was required to submit its interpretation for formal notice-and-comment.

## ARGUMENT

## I.   DEACERO PROPERLY INVOKED JURISDICTION UNDER 28 U.S.C. §1581(c)

Both Defendant and RTAC argue that Deacero did not properly allege jurisdiction "over its claim challenging the President's implementation of Section 232 tariffs." Def.'s Mot. to Dismiss and Resp. to Pl.'s Mot. for J. 12, July 9, 2021, ECF No. 25 ("D. Br.") ("{b}ecause Deacero has not properly alleged jurisdiction over its claims challenging the President's implementation of Section 232 tariffs, those claims must be dismissed for lack of jurisdiction."); *see also* Def. Intervenor's Resp. Br. 11-15, July 9, 2021, ECF 24 ("D-I Br."). Both mischaracterize Deacero's claim: Deacero is not challenging before this Court the President's actions and the President's proclamation; the relief Deacero is seeking before this Court is not the reimbursement of Section 232 tariffs paid. Rather, Deacero is challenging Commerce's actions with respect to the deduction of Section 232 tariffs from U.S. price in its antidumping calculations as applied to Mexican steel products in its *Final Results*; the relief Deacero is seeking is a remand to Commerce with instructions not to deduct Section 232 duties from U.S. price.

Deacero clearly and concisely framed the issue:

Can Commerce treat Section 232 duties as "ordinary" customs duties and deduct these duties from U.S. price in calculating antidumping duty margins when the duties themselves as applied to imports of Mexican steel products are unlawful because they were implemented outside of the applicable statutory time limits?

Pl.'s Br. Supp. of Mot. for J. 1, May 10, 2021, ECF No. 23 ("Pl. Br").

Commerce's treatment of Section 232 duties as "ordinary" customs duties is not in accordance with law because the duties themselves, as applied to imports of

> Mexican steel products, are unlawful, making any action taken by Commerce to
> deduct the duties from U.S. price *ultra vires*.

*Id.* at 10-11.

Deacero has clearly and unequivocally stated that it is challenging actions taken by Commerce. Therefore, as both Defendant and RTAC concede, the Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2) over Deacero's claim that Commerce's decision to deduct Section 232 duties from U.S. price for purposes of calculating an antidumping margin was not otherwise in accordance with law. *See* D-I Br. at 12 ("These statutory provisions {19 U.S.C. § 1516a and 28 U.S.C. § 1581(c)} give the Court clear authority to consider Deacero's arguments that Commerce erred in finding that Section 232 duties are not {sic} deductible under 19 U.S.C. § 1677a(c)(2)(A) and *Wheatland Tube*."); *see also* D. Br. at 12-13.

      Contrary to the arguments of Defendant and RTAC, jurisdiction is not available under 28 U.S.C. § 1581(i). Section 1581(i) explicitly states, "{t}his subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable … by the Court of International Trade under section 516A(a) of the Tariff Act of 1930." 28 U.S.C. § 1581(i). Where jurisdiction is available through one of the specific grants of jurisdiction, parties cannot invoke § 1581(i) jurisdiction. *See Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) ("Section 1581(i) embodies a 'residual' grant of jurisdiction … and may not be invoked when jurisdiction under another subsection of {section} 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." (citation omitted)). Otherwise, plaintiffs would be able to circumvent the method that Congress intended for them to bring certain types of claims. *See Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019).

      Deacero's claim was brought under 28 U.S.C. § 1581(c). 28 U.S.C. § 1581(c) confers jurisdiction on this Court to hear "any civil action commenced under section 516A . . . of the

4

Tariff Act of 1930." 28 U.S.C. § 1581(c). Section 516A, in turn, provides for review in the Court of International Trade of certain "reviewable determinations" in antidumping duty proceedings for the purpose of "contesting any factual findings or legal conclusions upon which the {AD} determination is based." 19 U.S.C. § 1516a(a)(2)(A)-(B). Among the list of reviewable determinations is "a final determination . . . under section 1675 of this title." *Id.* § 1516a(a)(2)(B)(iii). Section 1675 provides for administrative review of antidumping duty orders. *See* 19 U.S.C. § 1675. Commerce's decision in the *Final Results* that it treated Section 232 duties as ordinary customs duties deductible from U.S. price is just such a § 1675 "final determination." *See Final IDM* at cmt. 5 (P.R. 192). Deacero's complaint contains one count alleging that "Commerce's determination to deduct from the price of Deacero's U.S. sales an amount for Section 232 duties is not supported by substantial evidence on the record and is otherwise not in accordance with the law." Compl. ¶ 16, ECF No. 2. Deacero's summons alleges it "contest{s} aspects of the U.S. Department of Commerce, International Trade Administration's final determination in the antidumping duty administrative review{.}" Summons 1, December 21, 2020, ECF No. 1. Because Deacero is challenging a "final determination" by Commerce—the *Final Results*—the statute gives this Court jurisdiction under 28 U.S.C. § 1581(c) to hear Deacero's claim.

Defendant cites to several cases to support its argument that Deacero's claim should be dismissed for lack of jurisdiction. None are dispositive to this question because they are readily distinguishable. In *Washington Int'l Ins. Co. v. United States*, 25 CIT 207, 138 F. Supp. 2d 1314 (2001), the plaintiff filed a complaint with three counts challenging various actions taken by U.S. Customs and Border Protection ("Customs"). *See Washington Int'l Ins.*, 25 CIT at 212. Count 1 challenged Customs' erroneous liquidation of entries at a rate different than the company-specific antidumping rate that should have been applied. *See id.* The two other counts were

dismissed by the court for lack of jurisdiction because plaintiff did not properly invoke § 1581(i) jurisdiction in the pleadings. *See id.* at 227. Citing to the court's statement in *Washington Int'l Ins.* that plaintiff "attempted to bootstrap two 28 U.S.C. 1581(i) counts onto a 28 U.S.C. 1581(a) case," Defendant attempts to draw a parallel with the instant case. *See* D. Br. at 15. But the two claims dismissed by the court in *Washington Int'l Ins.* were unrelated to the erroneous liquidation of the entries at an incorrect rate in count 1 (which the court did find to have jurisdiction over under 28 U.S.C. § 1581(a)). *See Washington Int'l Ins.*, 25 CIT at 227.

Here, Deacero has alleged a single claim: Commerce's deduction of Section 232 duties from U.S. price was not otherwise in accordance with law. Deacero is not alleging two separate claims in this action but is setting forth two separate legal bases for overturning Commerce's decision. The fact that Deacero is alleging multiple legal bases for challenging the same agency action does not constitute a new claim. *See, e.g., In re PersonalWeb Technologies v. Patreon, Inc.., et al*, 961 F. 3d 1365, 1375 (Fed. Cir. 2020), *petition for cert. docketed*, 19-1918 (April 7, 2021) ("under well-settled principles of claim preclusion, different arguments or assertions in support of liability do not all constitute separate claims. Regardless of the number of substantive theories available to a party and regardless of the differences in the evidence needed to support each of those theories, a party may not split a single claim into separate grounds of recovery and raise those separate grounds in successive lawsuits.").

*Brecoflex Co. v. United States*, 23 CIT 84, 44 F. Supp. 2d 225 (1999), *dismissed*, 215 F.3d 1344 (Fed. Cir. 1999) is also inapposite to the present case. Plaintiff in that case challenged Commerce's finding that it was not a producer, and therefore not an interested party within the meaning of the applicable regulation and lacking standing to request a circumvention inquiry. *See Brecoflex Co.*, 23 CIT at 84-85. The court found jurisdiction was not available under § 1581(c) because Commerce had not made a determination which was within the purview of §

1581(c). *See id.* at 86. Having concluded that jurisdiction over plaintiff's action could only be predicated on § 1581(i) and dismissing the claim, the court observed that while the complaint alleged both (c) and (i) jurisdiction, the summons did not, as was required under 28 U.S.C. § 2632(a) and CIT Rule 3. *See id.* at 87. Here, Commerce's decision in the *Final Results* to treat Section 232 duties as ordinary customs duties deductible from U.S. price is a 19 U.S.C. § 1675 "final determination" contemplated by Section 516A as a "reviewable determination" for this Court's jurisdiction. 19 U.S.C. § 1516a(a)(2)(B)(iii).

As Defendant points out, the court in *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313 (Fed. Cir. 2006) found that plaintiff's summons failed to comply with the essential purpose of initial pleadings: "to put the government on notice" of what decisions are being contested, when it found that the court lacked jurisdiction over certain omitted protests because plaintiff had failed to identify seven denied protests it sought to challenge in its initial pleadings. *See DaimlerChrysler*, 442 F.3d at 1320. Here, Deacero has put the government on notice of the single agency decision it is challenging: the *Final Results*.

Both Defendant and RTAC argue not only for § 1581(i) jurisdiction, but also that Deacero's challenge is time-barred by the statute of limitations which expired two years after the date of the Presidential Proclamation. *See* D. Br. at 17; *see also* D-I. Br. at 14-15. Deacero is challenging Commerce's decision in its *Final Results* to treat Section 232 duties as ordinary customs duties and deduct them from U.S. price. Jurisdiction to challenge Commerce's *Final Results* is available *only* under 28 U.S.C. § 1581(c). This action was brought on a timely basis under § 1581(c) jurisdiction, i.e., within 30 days of the publication of the *Final Results* in the Federal Register. *See Final Results* at 71,053; *see also* 19 U.S.C. § 1516a(a)(2)(A)-(B). Deacero's cause of action accrued only upon the final agency action, i.e., when Commerce issued its *Final Results*. Thus, Deacero's action is not time-barred.

Moreover, under the theory of § 1581(i) jurisdiction espoused by Defendant and RTAC, Deacero would be denied any judicial remedy as it would have lacked standing to bring suit to challenge the legality of deducting unlawful Section 232 duties from its U.S. price because final agency action took place over seven months *after* the two year statute of limitations running from the date of the Presidential Proclamation. Such an unjust result only further clarifies that the Court's jurisdiction is properly exercised under § 1581(c).

## II.    THE EXHAUSTION DOCTRINE DOES NOT DICTATE DISMISSAL OF DEACERO'S CLAIM

RTAC argues that Deacero did not exhaust its administrative remedies because it did not raise in its case brief before the agency the argument that Section 232 duties cannot be treated as ordinary customs duties because they are unlawful. *See* D-I Brief at 10-11. This Court recognizes certain exceptions to the exhaustion doctrine, including where the question is one of pure law and does not require further factual development. *See Qingdao Maycarrier Imp. Exp. Co. v. United States*, 949 F. Supp. 2d 1335, 1345 (Ct. Int'l Trade 2013). The pure law exception applies when (1) plaintiff raises a new argument; (2) this argument is of a purely legal nature; (3) the inquiry requires neither further agency involvement nor additional fact finding or opening up the record; and (4) the inquiry neither creates undue delay nor causes expenditure of scarce party time and resources. *See Consol. Bearings Co. v. United States*, 25 CIT 546, 553-54, 166 F. Supp. 2d 580, 587 (2001). Deacero agrees with Defendant's observation that "interpretations of governing legal authorities, such as statutes, regulations, and presidential proclamations, involve questions of law." D. Br. at 11 (citation omitted). Whether 19 U.S.C. § 1675 permits Commerce to deduct unlawful duties from U.S. price, and whether Section 232 duties on imports of Mexican steel products are unlawful, are pure questions of law. *See Yanko v. United States*, 869 F.3d 1328, 1331 (Fed. Cir. 2017) (treating as a "pure legal issue of statutory interpretation" claim based on interpretation of statutory provision and related executive order). Consideration of this

8

issue does not require the application of any expertise from Commerce nor the development of a special factual record either before or after the Court's consideration of the issue. Can an agency—in this case Commerce—treat unlawful duties as ordinary Customs duties under U.S. law? Deacero submits the answer to this purely legal question is no.

## III.    CASE LAW IS NOT SETTLED ON THE QUESTION OF LEGALITY OF SECTION 232 DUTIES.

Deacero acknowledges that the Court in *Universal Steel Prod., Inc. et al v. United States*, 495 F. Supp. 3d 1336 (Ct. Int'l Trade 2021), has recently addressed the timeliness of Section 232 duties as applied to Mexico and Canada. However, that decision is currently under appeal. *See Universal Steel Prod.*, 495 F. Supp. 3d, *appeal docketed*, No. 21-1726 (Fed. Cir.  March 10, 2021). Thus, the issue of whether the Section 232 tariffs as applied to Mexican steel imports are unlawful is not yet settled. Given this, Deacero intends to move for an order staying this action pending final disposition of the *Universal Steel Prod.* litigation which would settle the issue of whether the tariffs violated procedural time limitations of Section 232 and therefore were unlawful.

Defendant and RTAC cite to *Maple Leaf Marketing Inc. v. United States et al.*, No. 20-00125, 2021 WL 2557798 (Ct. Int'l Trade June 22, 2021) to argue that the legality of the Section 232 tariffs has already been upheld because the Court found that the tariffs on Canadian steel imports were timely. In *Maple Leaf,* however, the Court did not address the question whether the tariffs were properly implemented within the 90- and 15-day time limit because they were implemented as one of two separate actions through Proclamation 9711 which both had to adhere to the statutory time limitation. *Id*. This sets the decision in *Maple Leaf* apart from the one of the issues currently being appealed in *Universal Steel*.

Although the Federal Circuit in *Transpacific* addressed the 90- and 15-day time limitations in the 232 statute, the facts in *Transpacific* distinguish that case from the facts

9

presently before the Court. *Transpacific Steel LLC v. United States*, No. 20-2157, 2021 WL 2932512 (Fed. Cir. July 13, 2021). The tariffs implemented on Turkey through Proclamation 9705 constituted *one* action (which the Federal Circuit determined could be adjusted months later from 25% to 50% without violating the statutory time limitations of § 1862(c)). *Id*. With respect to the tariffs on Mexican steel imports, there are two distinct actions that were taken, one of which violated the statutory time limitations of § 1862(c) because it was not implemented within the 90- and 15-day time limit. 19 U.S.C. § 1862(c). While Proclamation 9705 only took a single action with respect to Mexico by announcing negotiations and no application of tariffs, Proclamation 9711 took two actions: (1) the implementation of tariffs on steel imports from Mexico and (2) ongoing negotiations with Mexico. Proclamation 9711 states that it "superseded" any action taken in Proclamation 9705 inconsistent with Proclamation 9711. *See Proclamation 9711 of March 22, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 13,361, 13,362, ¶ (10) (Mar. 28, 2018) ("Proclamation 9711"); *see also Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ("Proclamation 9705"). The Merriam-Webster Dictionary defines the word "supersede" as "to take the place or position of" or "to displace in favor of another." Merriam-Webster Dictionary, supersede. Therefore, the plain language of Proclamation 9711 and the dual action taken in Proclamation 9711 displace the single action taken in Proclamation 9705. *See* Proclamation 9705. Both actions with respect to Mexico in Proclamation 9711 were subject to the procedural statutory safeguards of 19 U.S.C. § 1862(c), but one of those actions—the tariffs—were not implemented within the required time period. While the Federal Circuit in *Universal Steel* is currently considering this argument, the court in the recent *Transpacific* decision did not. *Universal Steel Prod., Inc.*, 495 F. Supp. 3d, *appeal docketed*, No. 21-1726 (Fed. Cir. Mar. 10,

2021). Deacero therefore intends to move for an order staying this action pending final disposition of *Universal Steel*.

## IV.   SECTION 232 DUTIES ARE NOT ORDINARY CUSTOMS DUTIES

### A.   This Court's Decision in Borusan Involved a Different Factual and Legal Scenario and is Not Dispositive of the Issues in this Case

In responding to Deacero's arguments regarding the special nature of Section 232 duties, Defendant and RTAC rely on this Court's recent decision in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) (*"Borusan"*), which upheld Commerce's decision to deduct from U.S. price the amount of Section 232 duties *paid on imports from Turkey* in an administrative review involving *Turkish* products. As an initial matter, it is important to note that Commerce's analysis in *Borusan* does not automatically apply to this case, which involves the deduction of Section 232 duties imposed on imports from *Mexico* in an administrative review involving a Mexican producer. This is especially true where the amount, duration, and rationale behind the imposition of Section 232 duties differ between the two countries, and Commerce has declined to establish a formal rule determining the scope of "United States import duties" to be deducted from U.S. price, preferring instead to make a case-by-case determination. If Commerce is correct that it has not established an administrative rule deducting 232 duties, the deduction of 232 duties (and any other calculation methods or processes) in this case must be judged against the legal context and the specific facts of this case.[1]

---

[1] If the deduction of 232 duties amount to an administrative rule, then, as discussed infra in Section V, Commerce violated the rulemaking requirements under the Administrative Protective Act.

11

**B.    Many Aspects of the Court's Analysis in Borusan Support Deacero's Arguments in this Case**

In fact, several aspects of the Court's reasoning in *Borusan* support Deacero's position. In *Borusan*, this Court began its analysis with the text of the statute, recognizing that the phrase "United States import duties" in 19 U.S.C. § 1677a(c)(2)(A) was not defined and Commerce had, in previous cases, reasonably determined that some import duties are special duties that should not be included within the term "United States import duties." *Borusan* at 1371-1372.

The Court then found the "threshold question" was "what is the purpose of the deduction for 'import duties' in the dumping margin calculation, and does reduction of price by Section 232 duties serve that purpose." *Id.* at 1373. To address this question, the Court examined the factors Commerce had cited in concluding that Section 201 duties were not "United States import duties" and that Section 232 duties were. Considering these factors, the Court asked three questions: "(1) whether the duties are remedial, (2) whether they are temporary, and (3) whether deducting them from EP and CEP would result in an impermissible double remedy." *Id.* at 1374.

**C.    The Section 232 Duties Imposed on Mexican Imports of Steel Are Remedial and Temporary**

Despite Commerce's position that Section 232 duties "are not focused on remedying injury to a domestic industry," the Court in *Borusan* noted that "the purpose of Section 232 duties is also remedial in a broad sense," and that the statute demonstrates "Section 232 duties are *not part of normal trade remedies*, but rather are enacted in response to trade practices in specific instances in which the welfare of key domestic industries is impacted by foreign trade." *Borusan* at 1374 (citing 19 U.S.C. § 1862(d)) (emphasis added). The Court concluded that "Section 232 duties are remedial, not in the sense of AD/CV duties but more closely to the sense of remediation reflected in Section 201." *Id.* The Court then noted some of the key differences

12

between Section 201 and Section 232 duties, and only tepidly endorsed Commerce's reasoning as "not the strongest," but "not completely bereft of logic." *Id.* at 1374.

With respect to the second factor, the temporary nature of the duties, the Court in *Borusan* disagreed with Commerce's view that the permanence of Section 232 duties could be a distinguishing factor that justified treating Section 201 and 232 duties differently. The Court noted that both Section 201 and 232 duties are "temporary in that no Congressional action is needed to end them," which is "a clear difference from normal customs duties." *Id.* While the Court recognized the differences in the way Section 201 and 232 duties were time-limited, it concluded that the presence of those differences "does not make Section 232 significantly more permanent than Section 201. Thus, to the court, lack of permanence is not a viable reason to distinguish Section 201 duties from Section 232 duties." *Id.* at 1374-75.

In this case, the history of Section 232 duties imposed against Mexico, which have been threatened to be imposed, imposed, and then revoked, all within the span of two years, clearly demonstrate the temporary nature of Section 232 duties. Moreover, the Presidential Proclamations establishing and revoking Section 232 duties on Mexico make clear that they were never intended to be permanent, but rather, were intended to be used as one aspect of broader trade negotiations. *See* Proclamation 9705 at 11,626; *see also* Proclamation 9711 at 13,361. Although Section 232 duties do not have a "statutorily-imposed duration," D. Br. at 28 (quoting Final IDM at 11-12), the facts of this case reveal the temporary, abnormal, and ever-changing nature of Section 232 duties.

### D.   The Section 232 Duties on Mexico Demonstrate the Practical Interplay Between Antidumping/Countervailing and Section 232 Duties

Having found Commerce's evaluation of the remedial and temporary factors to be lacking, the Court in *Borusan* focused on the third factor – impermissible double-counting and statutory interplay – and ultimately found that it tipped the balance in Commerce's favor in that

13

case. *See Borusan* at 1375. Specifically, the Court focused on the statutory interplay between Section 201 and the antidumping and countervailing duty provisions, and the perceived lack of such interplay with respect to Section 232, and found justification for Commerce's different treatment of the two types of duties. *See id.* at 1375-76. The Court noted that Section 201 requires the International Trade Commission and President to consider the level of dumping or actionable subsidization in making an injury determination and setting the level of surge relief, and concluded that "Section 201 duties are, in fact, related to and complimentary to antidumping duties," but that there is "no such requirement of complimentary treatment with normal unfair trade laws in Section 232." *Id.* at 1375. While this may arguably be true in some context, including perhaps the 232 duties imposed on Turkey, in this case there is a clear link between the presence of dumped goods from Mexico in the U.S. market and the level of Section 232 duties imposed on imports from Mexico.

Defendant and RTAC both focus their arguments on *Borusan* and stress the lack of explicit statutory cross reference or legislative history stating that the President is required to consider injury to the domestic duty, or antidumping and countervailing duties, when imposing Section 232 duties. However, nothing in Section 232 precludes Commerce or the President from considering antidumping and countervailing duties, and there is clear evidence that the President explicitly considered them in this case. Notably, Section 232(d) enumerates several factors to be considered, but specifies that consideration must be conducted "without excluding other relevant factors." 19 U.S.C. § 1862(d). Moreover, while the statute does not directly reference the term "injury" to the domestic industry, it does require Commerce and the President to consider injury-like factors about the domestic industry, including "the impact of foreign competition on the economic welfare of individual domestic industries; and any substantial unemployment, decrease

14

in revenues of government, loss of skills or investment, or other serious effects resulting from the displacement of any domestic products by excessive imports." *Id.*

As the Federal Circuit noted in *Wheatland*, ordinary import duties are "imposed regardless of whether the U.S. industry is suffering adverse effects as a result of imports." *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1362 (Fed. Cir. 2007). The Section 232 duties at issue in this case, however, were premised on the adverse effects on the U.S. industry caused by imports of steel and aluminum. The Section 232 duties on Mexico required consideration of the impact of foreign competition and the "serious effects resulting from the displacement of any domestic products by excessive imports," 19 U.S.C. § 1862(d), and it is clear from the record of Commerce's investigation that injury to the domestic industry was, as a matter of fact, considered. *See generally Publication of a Report on the Effect of Imports of Steel on the National Security: An Investigation Conducted Under Section 232 of the Trade Expansion Act of 1962, as Amended*, 85 Fed. Reg. 40,202, 40,203 (Dep't of Commerce July 6, 2020) (referencing harms caused to the domestic industry and need for Section 232 duties to remedy them). While this certainly speaks to the remedial nature of Section 232 duties, it also shows that, just like Section 201 and antidumping/countervailing duties, these Section 232 duties were imposed after a finding that the domestic industry was being harmed and consideration of the adequacy of existing trade remedies. In its Brief, Defendant suggests that references to "the underlying Section 232 investigation are without merit because the economic impact on the United States steel industry is just a precursor to the President's ultimate finding that there is a threat to national security." D. Br. at 35. However, the fact that the economic impact on the United States steel industry was a precursor to the President's ultimate finding further underscores the similarities between the Section 232 duties imposed on steel imports and

15

antidumping and Section 201 duties: all are based on a concern regarding the economic welfare of the domestic industry and the effect of imports.

Moreover, the Presidential Proclamations relating to Section 232 duties on Mexican imports make it clear that the President, as a matter of fact, considered the impact of dumped and subsidized products from Mexico. Proclamation 9894 indicates that the perceived inadequacy of existing antidumping and countervailing duties on Mexican and Canadian products was one of the factors considered in imposing Section 232 duties, and measures Mexico took to reduce dumping were critical in revoking Section 232 duties: "The United States has agreed on a range of measures with Canada and Mexico to prevent the importation of steel articles that are unfairly subsidized or sold at dumped prices, to prevent the transshipment of steel articles, and to monitor for and avoid import surges. These measures are expected to allow imports of steel articles from Canada and Mexico to remain stable at historical levels without meaningful increases, thus permitting the domestic industry's capacity utilization to continue at approximately the target level recommended in the Secretary's report." *Proclamation 9894 of May 23, 2019 Adjusting Imports of Steel Into the United States*, 84 Fed. Reg. 23,987 (May 23, 2019). In its brief, Defendant acknowledges this language but argues that this fact "does not alter the national-security focus of the statute." D. Br. at 34. While the Proclamation does not alter the statutory text, the language should have at least played a role in Commerce's interpretation of the statutory text and its application in this particular case involving Mexican products.

Further, while RTAC is correct that measures relating to subsidized and dumped products were not the only measures that led to revocation of Section 232 duties, D-I Br. 29-30, there is indisputably a link between those measures and the revocation of Section 232 duties against Mexican products – indicating that at least with respect to Mexico, harms from dumped and subsidized products were considered alongside other national security-related issues in

determining whether (and at what level) to impose Section 232 tariffs. With respect to Mexico, there was no clear line between the impact of dumped and subsidized products and national security threats, and the presence of dumped and subsidized products played a role in setting and removing Section 232 duties. It would defy the purpose of the Section 232 negotiations, and the United States' commitments to Mexico, to tie Section 232 duties to Mexico's overall trade partnership with the United States and commitment to reducing unfairly priced and subsidized goods into the United States, only to effectively create artificial dumping margins for Mexican producers by deducting the amount of Section 232 duties already paid from U.S. price in antidumping duty reviews.

## V.   COMMERCE'S DECISION TO DEDUCT SECTION 232 DUTIES FROM U.S. PRICE WITHOUT NOTICE VIOLATES LONGSTANDING PRINCIPLES OF ADMINISTRATIVE LAW

Both Defendant and RTAC argue that Commerce's treatment of Section 232 duties is not an administrative rule, and Commerce was not required to undergo notice-and-comment rulemaking. In making these arguments, however, they fail to address any factor that makes this situation different than Commerce's determination not to deduct Section 201 duties, which was subject to notice-and-comment rulemaking.

Contrary to RTAC's assertions, *Wheatland* cannot be viewed as establishing an "ascertainable standard" favoring the deduction of Section 232 duties from U.S. price. D-I Br. at 31. While RTAC is correct that Commerce does not necessarily "need to engage in notice-and-comment rulemaking to apply a judicially established legal test," it fails to note that the CAFC in *Wheatland* did not purport to establish a legal test for interpreting the term "United States import duties."[2] The holding in *Wheatland* was more narrow: it found that Commerce's view that the

---

[2] Notably, the *Mid Continent Nail* cases RTAC cites involved Commerce's "mixed media" test, which it had developed at the CAFC's instruction based on preexisting public sources (including previous scope rulings) as a test that could be used prospectively in analogous circumstances.

17

term "United States import duties" did not include Section 201 duties, which it had established pursuant to notice-and-comment rulemaking, was entitled to deference and a reasonable interpretation. *See Wheatland,* 495 F.3d at 1364-66. Following *Wheatland,* there was no established judicial rule as to whether Section 232 duties were "United States import duties." Moreover, to the extent that the *Wheatland* decision was instructive for the regulated community, it suggested: 1) Commerce was required to follow formal notice-and-comment procedures when determining, for the first time, how or whether to deduct certain duties from U.S. price in antidumping duty administrative reviews; and 2) the term "United States import duties," included only ordinary, consistently applied, non-remedial duties, and not all duties. *See id.* Commerce's decision in this case to deduct Section 232 duties from U.S. price therefore represents a departure from its previous policy and should have been subject to notice-and-comment rulemaking.

---

*See* D-I Br. at 31. In *SWR from Korea*, the administrative review underlying *Wheatland*, Commerce made no attempt to create – and the CAFC did not uphold – a binding prospective test designed to resolve the question of whether a particular type of duty should be deducted from U.S. price. *See Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 19,153, 19,154-61 (Apr. 12, 2004). The decisions were specific to Section 201 duties.

18

## <u>CONCLUSION</u>

For the reasons set forth above and in Deacero's opening Brief in Support of Plaintiffs' Motion for Judgment on the Agency Record, the Court should find Commerce's Final Results to be unsupported by substantial evidence and otherwise not in accordance with law, and remand this action to Commerce for further proceedings.


Dated:   August 6, 2021                   Respectfully submitted,


                                          /s/ Rosa S. Jeong
                                          Rosa S. Jeong
                                          Sonali Dohale
                                          Friederike S. Görgens
                                          GREENBERG TRAURIG, LLP
                                          2101 L Street, N.W., Suite 1000
                                          Washington, DC  20037
                                          (202) 331-3100 (Phone)
                                          (202) 331-3101 (Fax)

                                          *Counsel for Plaintiffs Deacero S.A.P.I. de C.V. and Deacero USA, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(2), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for the Brief in Support of Plaintiffs' Motion for Judgment on the Agency Record, as computed by the word count function of the word processing system used to prepare the brief, is 5,859 words (not including table of contents, table of authorities, counsel's signature block and this certificate).

Dated:   August 6, 2021                    Respectfully submitted,


/s/ Rosa S. Jeong
Rosa S. Jeong
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC  20037
(202) 331-3100 (Phone)
(202) 331-3101 (Fax)

*Counsel for Plaintiffs Deacero S.A.P.I. de C.V. and Deacero USA, Inc.*

*ACTIVE 59232884v1*